Gabrielli, J.
These cases are again before us as a result of the United States Supreme Court’s vacatur of our prior decision, accompanied by the direction to reconsider the issues in light of Arnett v. Kennedy (416 U. S. 134). The issues, to be more narrowly defined hereinafter, concern the adequacy of the procedural safeguards contained in section 210 of the Civil Service Law, often referred to as the Taylor Law, which, in summary, provides that a public employee, found by an executive officer to have engaged in a strike, may be summarily penalized by the imposition of a fine and placement on one year’s probationary status with the right, however, thereafter to file an objection which, depending upon evaluation by the reviewing officer, could result in reinstatement of tenure and the restoration of the money exacted under the fine, or the holding of a hearing if the reviewing officer discerns the existence of fact questions, or summary rejection where the officer determines that there is no substance to the objection (Civil Service Law, § 210, subd. 2).
Briefly stated, subdivision 1 of the section prohibits strikes by public employees. The main issue presented in these cases is whether due process is afforded in disciplining of public employees who are charged with having engaged in a strike contrary to the injunctive provision of section 210.
We conclude that the statutory procedures relating to notice, hearing, penalties and review are entirely adequate as affording the required degree of due process. In order to place the issue in proper focus, it is well to here set out fully the appropriate mandates of the section as they relate to the procedures to be *552 followed: Paragraph (d) of subdivision 2 states as follows: “ In the event that it appears [that a public employee has engaged in a strike] * * * the chief executive officer of the government involved shall, on the basis of such investigation and affidavits as he may deem appropriate, determine whether or not such violation has occurred and the date or dates of such violation. If the chief executive officer determines that such violation has occurred, he shall further determine, on the basis of such further investigation and affidavits as he may deem appropriate, the names of the employees who committed such violation and the date or dates thereof. Such determination shall not be deemed to be final until the completion of the procedures provided for in this subdivision ”; and paragraph (e) states: “ The chief executive officer shall forthwith notify each employee that he has been found to have committed such violation, the date or dates thereof and of his right to object to such determination pursuant to paragraph (h) of this subdivision ; he shall also notify the chief fiscal officer of the names of all such employees and of the total number of days, or part thereof, on which it has been determined that such violation occurred. Notice to each employee shall be by personal service or by certified mail to his last address filed by him with his employer.”
We now turn to the all-important paragraph (h) of the subdivision which we deem to adequately cloak the employee with the right to review fully the determination made by the chief executive officer. It provides: “ Any employee determined to have violated this subdivision may object to such determination by filing with the chief executive officer, (within twenty days of the date on which notice was served or mailed to him pursuant to paragraph (e) of this subdivision) his sworn affidavit, supported by available documentary'proof, containing a short and plain statement of the facts upon which he relies to show that such determination was incorrect. Such affidavit shall be subject to the penalties of perjury. If the chief executive officer shall determine that the affidavit and supporting proof establishes that the employee did not violate this subdivision, he shall sustain the objection. If the chief executive officer shall determine that the affidavit and supporting proof fails to establish that the employee did not violate this subdivision, he shall dis *553 miss the objection and so notify the employee. If the chief executive officer shall determine that the affidavit and supporting proof raises a question of fact which, if resolved in favor of the employee, would establish that the employee did not violate this subdivision, he shall appoint a hearing officer to determine whether in fact the employee did violate this subdivision after a hearing at which such employee shall bear the burden of proof. If the hearing officer shall determine that the employee failed to establish that he did not violate this subdivision, the chief executive officer shall so notify the employee. If the chief executive officer sustains an objection or the hearing officer determines on a preponderance of the evidence that such employee did not violate this subdivision, the chief executive officer shall forthwith restore to the employee the tenure suspended pursuant to paragraph (f) of this subdivision, and notify the chief fiscal officer who shall thereupon cease all further deductions and refund any deductions previously made pursuant to this subdivision. The determinations provided in this paragraph shall be reviewable pursuant to article seventy-eight of the civil practice law and rules.”
Analysis of these statutory requirements discloses that provision is made for the following procedures:
An initial determination is made by the chief executive officer of the government involved “ on the basis of such investigation and affidavits as he may deem appropriate ”. He may determine either that there has been no violation or that a violation has occurred. If it be the latter, he then determines, “ on the basis of such further investigation and affidavits as he may deem appropriate ”, the names of the employees and the dates of violation. Notice in person or by certified mail is then given to each employee charged, together with advice of his right to object to the initial determination. Within 20 days thereafter each employee charged may file a written objection with the chief executive officer. Such objection shall consist of the employee’s sworn affidavit containing a short and plain statement of the facts on which he relies to show that such determination was incorrect, supported by available documentary proof. The chief executive officer is then presented with three options: (1) if he determines that the proof establishes that the employee did not violate the subdivision, he shall sustain *554 the objection; (2) if he determines that beyond any question of fact the proof fails to establish that the employee did not violate the subdivision he shall dismiss the objection and so notify the employee; or (3) if he determines that the proof raises a question of fact which if resolved in favor of the employee, would establish that the employee did not violate the subdivision he shall appoint a hearing officer to determine in fact whether there was a violation.
The hearing officer shall conduct a hearing which will serve as the vehicle for making his determination. Although the statute does not make explicit provision with respect thereto, this would be an evidentiary hearing at which the employee would be accorded all his due process rights (Matter of Hecht v. Monaghan, 307 N. Y. 461), following which the hearing officer determines whether there has been a violation. As noted above the statute provides that the burden of proof at such hearing shall be borne by the employee and that a determination in his favor must be based on a preponderance of the evidence.
At this point the employee, if necessary and if he be so advised, becomes entitled to a full-blown article 78 judicial review of the hearing officer’s determination. On the one hand, if the chief executive officer has determined that without question of fact the employee is guilty of the violation charged, that determination may be called up for review. No evidentiary hearing having been had, the issues will be whether the chief officer proceeded without or in excess of jurisdiction, whether his determination was made in violation of lawful procedure, or whether it was affected by an error of law (CPLR 7803, subds. 2, 3). On the other hand, if the adverse determination has been made by a hearing officer following a hearing, in addition to the three foregoing issues, the employee may also question whether the hearing officer’s determination is, on the entire record, supported by substantial evidence (CPLR 7803, subd. 4).
Thus, it appears without question that an employee charged with violation is assured his due process rights at some stage, although perhaps not always prior to the imposition of Taylor Law penalties against him. If found guilty of a violation as a matter of law he is entitled to a judicial review long held appropriate to examine such a determination. If the finding of guilt is based on evidence introduced at a hearing, he is *555 assured of his due process rights at such hearing and thereafter a judicial review thereof in order to examine that determination. Additionally, in the event of his exoneration in consequence of the hearing, the statute expressly assures the employee that any penalties imposed shall cease forthwith and any payroll deductions shall he refunded.
It may be urged that the proof which may be submitted by the employee in the initial stage (i.e., his own affidavit plus documentary proof) is too restricted, or that the procedures fall short of due process requirements because absence from work without permission during a general work stoppage is presumed to be a violation, or because the burden of proof is to be borne by the employee, or because the issue to be determined is reversely phrased, i.e., that it must be determined that the employee is not guilty rather than that he is. In many settings these inversions of what might be said to be normal procedural expectations would be disturbing, but not so here. The statutory presumption, clearly rebuttable, in the practical realities of a strike situation does have a “ supporting foundation in the probabilities ” (cf. People v. Kirkpatrick, 32 N Y 2d 17, 24). Additionally, and perhaps more importantly, the proof in support of what is essentially a subjective issue, the explanation for failure to report for work, is, if not exclusively within the possession of the employee, peculiarly accessible to him. In effect the employer, if the 'statute otherwise required, would be called on to establish a negative proposition, that there was no legitimate excuse for the employee’s absence, and, of course, he would be required to do so under considerable practical handicaps as to access to relevant evidence. In these circumstances it is not a denial of due process to shift the burden of proof (semble contra, Sugar v. Curtis Circulation Co., 383 F. Supp. 643; but see commentary, New York Trial Practice, McLaughlin, N. Y. L. J., Nov. 8, 1974, p. 1, col. 1). It is at once obvious that in his own affidavit, supplemented by documentary evidence, the employee could raise any legitimate factual issue as to why he was absent from his employment at the time of the strike.
Thus, in the somewhat special circumstances of the no-strike provisions of the Taylor Law, by reason of the express pro *556 cedural provisions of the statute itself, supplemented by the availability of judicial review under the provisions of article 78, the employee is assured of his due process entitlements.
We now turn to the facts in these cases. Following the failure to reach agreement on the terms of a new employment contract being negotiated by the Civil Service Employees Association with the State of New York, a large number of State employees failed to report to their jobs on the first and second days of April, 1972. As a consequence, respondent Director of Employee Relations, utilizing the provisions of section 210 of the Civil Service Law, notified the individual employees that they had been determined to be on strike and that the statutory penalties for such action would therewith be imposed. These employees were also notified that they might file objections within 20 days in the form of a sworn affidavit containing ‘ ‘ a short, plain statement of the facts upon which you rely to show that my determination was incorrect,” these being the procedures set forth in the statute (Civil Service Law, § 210, subd. 2, par. [h]).
More than 7,800 employees were so notified. Approximately 4,400 failed to file affidavits objecting to the determination imposing the penalty. Of the 3,400 employees who did file objections, approximately 500 objections were sustained and these employees were judged not to have engaged in the strike. Respondents determined further that another 694 of the objections raised questions of fact warranting a hearing, and that the remaining 2,300 objections were prima facie without merit. This last group of employees, or their attorneys, were notified that they could further object to this determination by appropriate procedures afforded under CPLR article 78.
The Sanford, Winkowski, Splatt and Godbee cases were joined at Special Term. The petitioners commenced article 78 proceedings seeking annulment of the director’s determinations and a declaration of the unconstitutionality of subdivision 1 of section 2l0 and paragraphs (b), (d), (e), (f), (g) and (h) of subdivision 2. Special Term correctly noted that all of section 210 had already been declared constitutional in a variety of decisions (Matter of Lawson v. Board of Educ. of Vestal Cent. School Dist. No. 1, 62 Misc 2d 281, affd. 35 A D 2d 878, app. dsmd. 28 N Y 2d 993, app. dsmd. 404 U. S. 907; Matter of Zeluck v. Board of Educ. of City School Dist. of New Rochelle, 62 Misc 2d 274, affd. 36 *557 A D 2d 615, app. dsmd. 29 N Y 2d 749; Matter of Buffalo Teachers’ Federation v. Helsby, 35 A D 2d 318, cf. Rankin v. Shanker, 23 N Y 2d 111; City of New York v. De Lury, 23 N Y 2d 175). Special Term, however, analyzed a developing line of United States Supreme Court cases as warranting reconsideration of subdivision 2 of section 210. These cases (Fuentes v. Shevin, 407 U. S. 67; Bell v. Burson, 402 U. S. 535; Wisconsin v. Constantineau, 400 U. S. 433; Goldberg v. Kelly, 397 U. S. 254; Sniadach v. Family Finance Corp., 395 U. S. 337) established a trend toward insistence on affording a hearing to a person before he could be deprived of a property right, concerning, for example, his right to welfare benefits {Goldberg, supra), or one’s right to physical goods sought to be replevied by a creditor {Fuentes, supra). Heavy reliance was placed on the Fuentes decision which appeared to lend very broad protection to an individual’s property rights regardless of the nature of the property (i.e., whether considered a “ necessary ” or not). The only exceptions to this coverage stated in Fuentes would be where the seizure had. been necessary to secure an important governmental or public interest, where there was legitimate need for prompt action, and where the person initiating the seizure is a government official guided by narrowly drawn standards.
Special Term there found that this three-pronged test in Fuentes was not met by the procedures providing for summary fines and imposition of job probation set up in subdivision 2 of section 210 where, not only is there no provision for a hearing before such measures are imposed, but, as he further stated, no provision for any hearing except where the officer reviewing employees’ objections anight order such where he found the existence of fact questions. (Matter of Sanford v. Rockefeller, 70 Misc 2d 833.) The court also ruled that these proceedings did not lend themselves to being handled as class actions, a point not now before us.
In a separate opinion in the Collins matter, which presented issues identical with those decided in Sanford,the court followed the rationale as expressed in Sanford. With respect to employees among the petitioners in the Collins proceeding who failed to raise any objection at all to the imposition of the penalties, it was held that they had waived any argument that they had *558 been denied an opportunity to be heard, and their petitions were dismissed.
The Appellate Division in the Sanford, Winkowski, Splatt and Godbee cases held, in effect, that due process is satisfied by the provisions of subdivision 2 of section 210 and that there is no need for a prepenalty hearing. Beyond that, it was noted that postpenalty due process was satisfied by the statutory procedures providing for the reviewing officer’s use of discretion and, ultimately, in article 78 review where an abuse of discretion is claimed. The court recognized that the temporary loss of tenure and the loss of pay constitute deprivation of property rights, but found Fuentes inapplicable because of the overriding governmental and public interest in the deterrence of strikes by public employees as aided by the swiftly imposed penalty provisions (Matter of Sanford v. Rockefeller, 40 A D 2d 82).
Since Sanford, Winkowski and Splatt had been granted the opportunity for hearings on their objections, their petitions were dismissed by the Appellate Division on the ground they had failed to exhaust their administrative remedies, but because God-bee’s objection was summarily denied without the right to a hearing, his case was ruled subject to article 78 review of the propriety of that denial. The Appellate Division further ruled that Special Term had been correct in his determination of the impropriety of a class action.
The Appellate Division wrote a separate memorandum in the Collins proceedings and dismissed the petitions of those employees who had been granted a hearing, and remitted as to those employees who had filed objections, but who had not been granted a hearing. Special Term’s decision dismissing the petitions of those employees who had not filed objections was affirmed (Matter of Collins v. Rockefeller, 40 A D 2d 906).
All of these cases then arrived in this court either as of right or by leave, and were joined. Five Judges affirmed, without opinion, the Appellate Division’s disposition (Matter of Sanford v. Rockefeller, 32 N Y 2d 788). The dissent, in essence, expanded upon Special Term’s analysis of the Fuentes, Goldberg, Sniadach line of cases with special emphasis on Fuentes (Matter of Sanford v. Rockefeller, supra, pp. 791-795).
The eases then were reviewed by the United States Supreme Court which, on May 13, 1974, vacated the judgments and *559 remanded the cases to this court for further consideration in light of Arnett v. Kennedy (416 U. S. 134, supra).
Thus, we now turn to the Arnett case which was concerned with procedures under the Lloyd-LaFollette Act (U. S. Code, tit. 5, § 7501) providing for removal of nonprohationary employees from the Federal service and for the remedies available to the employee to contest such removal. The act provides that the employing agency must furnish the employee with written notice of the proposed removal action and a copy of the charges; give him a reasonable time to answer; and furnish him with a decision. It is also provided that a preremoval hearing is not required, but that a postremoval hearing is available in every case. In that case the employee, discharged for allegedly verbally abusing his superior, attacked the statute’s validity asserting that he was denied due process because (1) there was no preremoval hearing provided for; (2) that the hearing officer at the postremoval hearing would be the very person he was accused of verbally attacking; and (3) also that this application of the Lloyd-LaFollette Act resulted in a violation of his right to free expression under the First Amendment.
Separate opinions were written. Justice Rehnquist, writing for himself, the Chief Justice and Justice Stewart, held that the employee’s right to be protected from discharge other than for causé was found in the Lloyd-LaFollette Act, and that he could not be heard to attack the procedural provisions of the very act pursuant to which he was seeking relief (416 U. S. 134, 152-154, 163). Referring to the Goldlerg-Sniadach-Fuentes line of cases, he noted that “ [t]hese cases deal with areas of the law dissimilar to one another and dissimilar to the area of governmental employer-employee relationships with which we deal here. The types of ‘ liberty ’ and ‘ property ’ protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests ” (id., at p. 155).
Justice Powell wrote an opinion concurring in part and concurring in the result in part, with which Justice Blackmun concurred. Justice Powell shunned the theory that the employee could not attack provisions of the same act under which he was seeking relief and went on to find that those provisions in no *560 way infringed upon the employee’s due process rights. Noting that neither Goldberg nor Fuentes involved the government’s interest in maintaining the efficiency and discipline of its own employees (id., at p. 168, n. 4), Justice Powell found there to be no necessity for a preremoval hearing. The separation of this employee from his job did not, for instance, present the exigency inherent in Goldberg where deprivation of welfare payments to a person marginally subsisting could lead, very conceivably, to a rapid state of starvation and exposure. Further, the government employee who loses his job is adequately protected where he can eventually receive an evidentiary hearing and be awarded back pay if reinstated. Justice Powell did not overlook the obvious injuries occurring because of the interim separation, but held that when weighed against the government’s interest these injuries, or deprivation of property, did not mandate any kind of preremoval hearing, much less a full evidentiary hearing.
Justice White separately concurred, in essence, with Justice Powell’s view that a postremoval hearing was perfectly adequate. “ In assessing whether a prior hearing is required, the Court has looked to how the legitimate interest asserted by the party asserting the need for a hearing, and the party opposing it, would be furthered or hindered ” (id., at p. 188). Thence followed an analysis of how the court had, in the Goldberg-Fuentes line of cases — and even in older cases such as North Amer. Gold Stor. Co. v. Chicago (211 U. S. 306) —viewed the summary action in light of the competing interests. Justice White concluded that the statute’s provisions to the extent they require 30 days advance notice and a right to make a written presentation, satisfied minimum due process requirement's and stated: “ we should not hold that procedural due process is so inflexible as to require the Court to hold that the procedural prqtections, of a written statement and oral presentation to an impartial hearing examiner provided by regulation, are insufficient ” (id., at p. 202). He found, however, that the employee in this case was denied due process by the fact he was being judged by the very person he was accused of attacking and partially dissented on that ground.
Justice Marshall, with whom Justice Douglas and Justice Brennan concurred, dissented on the grounds (1) that the stat *561 ute was defective for not providing for a preremoval hearing, and (2) that the statute was overbroad as a regulation of employees’ free speech rights. His weighing of the competing considerations in line with the Goldberg-Fuentes line of cases resulted in the scales being tipped in favor of the employee (id., at p. 206).
Finally, Justice Douglas separately dissented on the free speech ground (id., at p. 203).
It is first to be noted that the Arnett case is similar to the proceedings before us only insofar as it involves the question of the preremoval hearing. Otherwise, the court in Arnett dealt with quite a different statute, and a deprivation of property rights far exceeding those involved in the instant cases. A tenured employee’s removal for cause is not before us. Under section 75 of the Civil Service Law such an employee enjoys the full range of procedural protections. "What we are concerned with, rather, is the protection of an employee who, at most, can be disciplined by one year’s deprivation of tenure and loss of two days ’ pay for each day on strike. No one on this court would suggest that such penalties do not constitute deprivation of property (and see Perry v. Sindermann, 408 U. S. 593; cf. Board of Regents v. Roth, 408 U. S. 564); but it is quite obvious that these penalties are far removed on the scale of human travail from the outright removal from employment involved in Arnett. And, surely, there is no need for us to concern ourselves with the Rehnquist theory of inability to attack the statute pursuant to which relief is sought since section 210 describes conduct forbidden to public employees and the penalties attaching to such conduct, and gives to the employee no substantive right. The Lloyd-LaFollette Act, on the other hand, while it does contain certain prohibitions, gives to the employee the right not to be removed unless for cause shown. Thus, although there is room to raise the argument that one may not attack a statute pursuant to which he seeks relief when dealing with the LloydLaFollette Act, section 210 permits no such theory.
What we do get from Arnett is that six Justices consider there to be no need for a preremoval hearing (the Chief Justice, Justices Rehnquist, Stewart, Powell, White and Blackmun). If anything is clear from the fragmented Arnett holding it is that our prior decision in the proceedings before us gain added *562 strength. Appellant employees are in no way aided either hy the holding in Arnett, or the sum of the dicta therein expressed. And, while not so directed by the Supreme Court’s order to reconsider this case, we cannot overlook that court’s decision in Mitchell v. Grant Co. (416 U. S. 600) handed down on May 13,1974, the day of the vacatur of the instant judgments and almost a month after the Arnett decision.
In Mitchell, the court upheld a Louisiana statute which provided for a creditor’s recovery of goods under a vendor’s lien without the need for notice to the buyer or a hearing. Five Justices held the statute not to work a denial of due process. There is no need here to engage in a prolonged discussion of Mitchell. It sufficies to note that five of the Justices (four of whom dissented and one of whom concurred with the majority opinion) stated that Fuentes had been overruled by the majority opinion. If the Arnett dicta were not enough, then, to lay the question of prepenalty hearing to rest, the Mitchell case resolves all doubt.
It is further argued that subdivision 2 of section 210 nevertheless remains defective because there is no definite provision for a hearing at any stage; that a postpenalty hearing will only be held at the unfettered discretion of the reviewing officer. The short answer to that is that the officer’s discretion is, rather, open to review. His determination summarily rejecting the excuses contained in the employee’s affidavit is subject to article 78 review as specifically provided for in paragraph (h) of subdivision 2. To the argument that nothing short of an administrative hearing in every case, including a prepenalty determination, will satisfy due process requirements we again point out the nature of the property right involved. The employee cannot be fired from his job. Thus, the innocent employee unjustly penalized keeps his job and has every opportunity, including review by a Supreme Court Justice, to have the situation rectified and to regain the money and status lost. If his job is indirectly affected because of his temporary loss of tenure pending such review, he can, if ultimately ruled not to have been a striker, achieve reinstatement with back pay.
It must be remembered that at the Federal level there is no convenient and readily available device such as article 78 tailored to guarantee ultimate review of the actions of public *563 officers which might temporarily deprive a citizen of property of one sort or another. Surely, were a Goldberg sort of case to arise, where delay in resolution of factual questions could render the whole case moot because of the citizen’s inability to survive, due process would only be satisfied by an immediate hearing. All but three members of the Supreme Court make clear reference, however, to the need to balance the government’s interest against the nature and extent of the individual’s deprivation. Thus, the rangé of the individual’s deprivations runs all the way from summary cut-off of subsistance level welfare payments (Goldberg) to the repossession of a refrigerator, range, stereo and washing machine on which there was an unpaid balance of $574.17 {Mitchell). Indeed, as to the last situation there might even be desperate need for the range and refrigerator, yet the court ruled that it sufficed that at some point there be opportunity for a hearing and judicial determination.
The flexibility in approach to the balance to be struck in such cases can be seen in decisions by this court where we have measured the degree of essential due process to conform to the petitioner’s situation. In Matter of Fuller v. Urstadt (28 N Y 2d 315, 318), which involved a tenant’s asserted right of renewal of his lease in a Mitchell-Lama project, then Associate Judge Bbeitel wrote that “ [p] etitioners are entitled to the same treatment as other individuals who are the direct subjects of State action, namely, the assurance, implemented by the right to a hearing which need consist of no more than an opportunity to deny or explain, that the State has not acted arbitrarily or capriciously. The test is the limited one of arbitrariness and does not involve a full evidentiary hearing or the full scope review of administrative quasi-judicial action which must be supported by substantial evidence [citation]. ’ ’ Again, in Matter of Meschino v. Lowery (31 N Y 2d 772) petitioners had applied for accidental disability retirement. Their applications were approved by the Pension Fund Medical Board, but the board of trustees ruled that petitioners were eligible only for ordinary disability pensions. Petitioners were successful on an article 78 review, the court remanding the case on the ground the board of trustees should, if it did not wish to accept the medical board’s recommendation, reopen the case in order to allow petitioners *564 to submit evidence. Accordingly, petitioners’ attorney was notified that he might present evidence, documentary, testimonial, or both. The attorney was also advised that if the board decided to take testimony of others it would be taken without his presence. In upholding this procedure this court noted that “ [i]n the procedures so formulated we find implicit the additional and essential right of petitioners to be advised of the evidence against them and of the board of trustees’ final determination, in such form as to permit adequate judicial review. Petitioners’ reliance upon Goldberg v. Kelly * * * is mistaken. There, the court dealt with the ‘ desperate ’ situation of an ‘ eligible ’ welfare recipient (emphasis as in original) whose assistance had been cut off without a hearing * *■ * Here, there is no such ‘ desperate ’ exigency in respect of one enjoying an established status [citation] ’■’. (Matter of Meschino v. Lowery, 31 N Y 2d, at pp. 774-775, supra.)
If it be true, as I think has clearly been shown, that no prepenalty hearing is necessary in the cases before us, and if, as is shown by the cases just noted, full-blown adversary hearings are not always essential so long as the individual’s case (and the administrator’s reaction to it) remains open to judicial review, then it becomes manifest that the provisions of section 210 of the Civil Service Law are constitutionally valid.
We have taken pains to provide an in-depth analysis of these several authorities as well as Arnett and the other authorities therein discussed because of appellants ’ heavy reliance on them.
At this point, however, we feel constrained to refocus upon practical foundations for the enactment of the Taylor Law and, indeed, for our conclusion that the due process entitlements of public employees are fully protected by the statute (Civil Service Law, § 210).
The problem of a strike, in direct or masked form, by masses of public employees is unlike any of the situations to which the “ due process ” cases above discussed have addressed themselves. For three decades the Legislature has experimented with various schemes to maintain public 'services against the coercive threat or fact of a public employee strike. All of the schemes in one way or another have tried to protect the employees “ right to his job ”, while also providing an effective deterrent against the strike as a weapon. At the same time it may *565 be assumed that consideration was given to the fact that the public employee could make his influence felt and heeded by the Legislature and the executive. Indeed, the “ automatic ” tripping of sanctions in the various schemes, still, used in the current “ Taylor Law ” were apparently deemed necessary to strengthen the hands of those who might be too “ responsive ” to the demands of massed public employees.
The relatively adequate salary schedule of public employees with periodic across-the-board cost-of-living increases,, plus the enviable health, hospital, and retirement benefits, demonstrate that the assumptions have been valid. All this, too, without the, lawful strike as an economic weapon against nonprofit government.
It is with this backdrop that the Taylor Law should be assessed for fairness of procedure.
In all the categories involving the taking of rights, property, jobs, and other benefits, the factor most important to be considered is the irreversible or irreparable harm which may he visited upon the person in the event, that the sanction should not have been imposed. On this view the temporary suspension of tenure or imposition of fines under the Taylor Law is of ho. consequence. In the event of mistake the tenure right and payroll deductions are restored with retroactive effect.
On the government side there is a grave condition when the mass strike is contemplated. If hundreds, and more likely, many thousands, of administrative hearings are to be required automatically, prior to the, imposition of the penalties afforded by the statute, with the usual resort to judicial review after the administrative hearing, the government service could be tied up internally for years and at great expense. (These litigations are demonstrative illustrations.) Most important, with the passage of time the substantive issue, as in these cases, gets lost in the procedural thicket. Obviously, such a system is not a deterrent but could well become an added weapon in the hands of those who might seek to bring pressure on the public employer.
The Taylor Law formula is a simple one. Based on mass action, that is, concerted action, whether openly announced or disguised as coincidental sick leave, or the like, there is a presumption entitling the administrator to impose sanctions on *566 the employee. The employee has the opportunity to provide a written statement rehutting the presumption.
The rub is the administrative determination whether the employee’s statement, giving it full credit, raises a triable issue of fact, much like summary ¡judgment in the civil practice, upon which to base a hearing. That administrative determination is not final and absolute. It is subject to judicial review, which is, indeed, the only adequate ultimate safeguard.
The statutory direction to permit immediate recourse to review under CPLR article 78 is not restrictive. It is a boon to the affected employee. In the first place, he need not “ exhaust ” any further administrative remedies before going to court for relief. Secondly, the scope of review in the article 78 proceeding is adequate, namely, whether as a matter of law the employee must be given a hearing on the basis of his statement entitled to full credit. If so, the matter goes back to the administrative agency for the hearing.
The scheme provides, in short, a screening, and a judicially reviewable one at that. While some may argue that it is not the best of schemes, it must be conceded that it is not lacking in fairness given the problem of handling mass concerted action by hundreds or tens of thousands of public employees.
The Taylor Law sanctions and procedure are not drastic. The sanctions are all reversible in both monetary terms and in status. The persons affected are not the impecunious or unemployed but the compensated holders of tenured positions in the service of an employer which cannot go bankrupt or withdraw from the market.
Notably, there is no discharge, no termination of all compensation, but only limited payroll deductions and “ suspension ” of tenure. All of these are reversible without irreparable harm to the employee if it should eventuate that the sanctions were unjustly imposed. Comparing the Taylor Law sanctions with the payless suspensions, dismissals, and fines imposed by other laws governing civil servants they are markedly moderate. What is different is the summary procedure with a shifting of burden of proof, designed to meet the special problem of concerted mass action by employees.
For all the stated reasons and the foregoing analysis, we conclude that the orders of the Appellate Division should be affirmed.