Peter S. O'BRIEN, as President of the Council of Supervisors and Administrators of the City of New York, Local 1, SASOC, AFL–CIO, and Solomon Zeichner, on behalf of all others similarly situated, Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, Irving Anker, as Chancellor of the City School District of the City of New York and Hugh L. Carey, as Governor of the State of New York, Defendants.

No. 76 Civ. 660(PNL).

United States District Court,
S. D. New York.

July 8, 1980.

Thomas Kennedy, New York City, for plaintiffs.

Gary R. Tarnoff, Asst. Corp. Counsel, Daniel M. Cohen, Asst. Atty. Gen., State of New York, New York City, for defendants.

## MEMORANDUM ORDER

LEVAL, District Judge.

Peter S. O'Brien, President of the Council of Supervisors and Administrators of the City of New York, Local 1, brought this action as representative of a class of supervisory employees of the New York City school system against, *inter alia*, the Board of Education of the City of New York and Hugh L. Carey in his capacity as Governor of the State. The plaintiffs challenge the constitutionality of the strike penalty provisions of New York's Taylor Law, New York Civil Service Law §§ 200, 210 (McKinney's Supp.1978) (hereinafter cited by section), as those provisions are recorded on the face of the statute and as they were applied to the plaintiffs in the course of a labor dispute between the parties in 1975. The class of plaintiffs seeks declaratory and injunctive relief as well as damages.

In their second amended complaint, the plaintiffs narrowed their constitutional attack on the face of the penalty provisions to two contentions so as to avoid arguments already rejected by the U.S. Supreme Court

when it dismissed the appeal in *Sanford v. Rockefeller*, 421 U.S. 973, 95 S.Ct. 1972, 44 L.Ed.2d 464 (1975) for want of a substantial federal question. They contend first, that § 210 violates due process because it does not afford employees a fair and impartial tribunal; and second, that the deprivation of tenure protection is a cruel and unusual punishment.

The State has moved to dismiss the plaintiffs' complaint against the Governor on the ground that the complaint fails to state a cause of action, F.R.Civ.P. 12(b)(6). For the reasons stated below, the motion is granted, and the complaint is ordered dismissed as against the State.

### A. *The Taylor Law*

The Taylor Law prohibits public employees from engaging in strikes or other concerted stoppages or slowdowns of work, §§ 201.9, 210.1.

The chief executive officer of the agency of government involved is empowered in the first instance to determine whether an illegal strike has occurred, § 210.2(d), and is obliged to notify each employee found to have committed a violation of the Taylor Law, § 210.2(e). The Taylor Law provides that an employee notified that he or she has been found to have participated in an illegal strike may file objections to this determination with the chief executive officer. The chief executive officer must evaluate the objections and refer material questions of fact to a hearing officer appointed by the chief executive officer, § 210.2(h). Payroll deductions from the employee's wages begin upon the initial determination that an employee has engaged in an illegal strike, and are not stayed until the finding that the employee has engaged in an illegal strike has been reversed, at which time all deductions previously made would be refunded. §§ 210.2(g), .2(h). *See generally Tepper v. Galloway*, 481 F.Supp. 1211 (E.D. N.Y.1979).

Two other provisions of the Taylor Law deserve mention.

First, the statute creates a presumption that an employee absent from work without permission on the days when a strike is taking place is presumed to have participated in the strike, § 210.2(b); the burden is on the employee to prove that he did not participate in the strike.

Additionally, the determination of the chief executive officer is subject to immediate judicial review in a proceeding under Article 78 of the N.Y.C.P.L.R. If the chief executive officer rejects an absent employee's contention that he was not on strike without affording him a hearing, the standard of review in an Article 78 proceeding is whether the employee's excuse for his absence is insufficient as a matter of law. If the chief executive officer rejects an employee's objection to a strike penalty after providing the employee with a hearing, the standard of review in an Article 78 proceeding is whether the officer's finding is supported by substantial evidence, § 7803(4), and whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed, § 7803(3).

## B. The Due Process Claim

■ The plaintiffs contend that the Chancellor of the New York City School system, who acted as chief executive officer for the defendants for the purposes of § 210.2(d), was incapable of providing the plaintiffs with an impartial tribunal for the purpose of evaluating objections to the Chancellor's preliminary determination that the employees were in violation of the Taylor Law, see § 210.2. The plaintiffs contend that two aspects of the Chancellor's relationship with the school system make him presumptively, as well as actually, biased and render the penalty scheme of the Taylor Law unconstitutional: first, the Chancellor is responsible for administering the school system, which is the beneficiary of the fines and civil contempt penalties to be collected under the Taylor Law; second, the

Chancellor is authorized to provide the chief legal officer of the Board of Education with the data necessary to enable him to apply for an injunction and subsequent contempt orders. For the reasons stated below, I do not find that either contention supports the plaintiffs' constitutional attack on the Taylor Law.

The plaintiffs' contention regarding the Chancellor's pecuniary interest in rendering a decision adverse to objecting employees has been rejected before as a basis for attacking the constitutionality of the Taylor Law's strike penalty provisions. See Tepper v. Galloway, 481 F.Supp. 1211 (E.D.N.Y. 1979); Starrs v. Bock, 77 Civ. 5435 (S.D. N.Y. Dec. 21, 1978); Kornit v. Board of Education, 75 Civ. 578 (E.D.N.Y. July 22, 1975), remanded, 542 F.2d 593 (2d Cir. 1976), remanded, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), aff'd on original opinion, 591 F.2d 1330 (2d Cir. 1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1281, 59 L.Ed.2d 495 (1979). The plaintiffs suggest that the courts in Tepper, Starrs and Kornit neglected to give due weight to the Supreme Court's decision in Ward v. Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). I disagree.

In Ward, the Supreme Court declared unconstitutional an Ohio statute which authorized mayors to sit as judges in cases of ordinance violations and certain traffic offenses. The Court found that although the mayor did not share directly in the penalties and fines exacted, compare Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), the mayor's responsibilities for "revenue production", 409 U.S. at 58, 93 S.Ct. at 82, and "village finances", 409 U.S. at 60, 93 S.Ct. at 83, created a practical and serious inconsistency with the obligations incident to his judicial office. The Court in Ward distinguished the case of Dugan v. Ohio, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928), in which a mayor who shared legislative and executive authority with four other persons was found to have a sufficiently remote relationship to the finances of the city to warrant leaving undisturbed the presumption that the mayor would act impartially when he sat as judge. 409 U.S. at 60–61, 93 S.Ct. at 83.

In my view the financial responsibilities of the Chancellor are more akin to those approved in *Dugan*, than to those found in *Ward* to be inconsistent with judicial impartiality. Plaintiffs have not alleged facts which would lead to a different conclusion. Under the circumstances, I decline to deviate from the holdings in *Tepper, Starrs* and *Kornit*, which rejected the Chief Executive Officer's pecuniary interest as a basis for attacking the constitutionality of the Taylor Law.

Nor do I find merit in the plaintiffs' contention that the Chancellor's role as nominal party plaintiff in actions referred by the school system to the corporation counsel for injunctive relief and subsequent actions for civil contempt must disqualify him from reviewing objections pursuant to § 210.2(h).

In *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court refused to accept the proposition that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication. In *Withrow*, the Court rejected a constitutional challenge to the face of a Wisconsin statute which provided that an Examining Board of practising physicians could hear actions for suspension of physicians' licenses as well as investigate such physicians and recommend institution of criminal actions. The physician in *Withrow* contended that the Board should not be permitted to adjudicate the suspension of his license after investigating him pursuant to its administrative responsibility to investigate physicians and consider recommendations of prosecution. The Court adhered to the controlling presumption that, absent proof to the contrary, "state administrators [are] men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances;" this presumption was held not to be overcome by the fact that the administrators in question had been exposed to evidence and perhaps formed conclusions for the purpose of executing an administrative function. 421 U.S. at 55, 95 S.Ct. at 1468.

The plaintiffs here suggest that the Chancellor, unlike the Board in *Withrow*, exercises his administrative function of first investigating the plaintiffs and then instituting injunctive and subsequent contempt proceedings in an adversarial context, which grows out of the Chancellor's ongoing relationship with the employees. Similar objections to the impartiality of an administrative body were rejected by the Supreme Court in *Hortonville Joint School District # 1 v. Hortonville Educational Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).

The *Hortonville* case rejected a due process challenge by striking teachers to disciplinary hearings presided over by Board of Education officials who had engaged in pre–strike negotiations with the striking teachers and who were responsible for managing the school system affected by the strike. The Court noted first that the Board officials [like the Chancellor in the instant case] had no personal or financial stake in the outcome of the disciplinary hearings, 426 U.S. at 491–92, 96 S.Ct. at 2313–14. *Compare Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Ward v. Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). The Court then rejected the Board's involvement in the pre–strike dispute as a basis for overturning the presumption of fairness recognized in *Withrow v. Larkin, supra*.

*Hortonville* reaffirmed a two step analysis considering first the quality and importance of the affected interest of the individual and, second, the importance of the state's interest in preserving the procedures employed. This analysis leads to the same result here as was reached in that case.

Turning first to the employees' stake in the outcome of the Chancellor's review of the employees' objections, there are two factors noted in previous cases that support the constitutionality of the Taylor Law. First, "[t]he Taylor Law sanctions . . . are not drastic . . . . [and] are reversible

in both monetary terms and in status. . . [T]he persons affected are not the impecunious or unemployed but the compensated holders of tenured positions in the service of an employer which cannot go bankrupt or withdraw from the market." *Sanford v. Rockefeller*, 35 N.Y.2d 547, 564–66, 364 N.Y. S.2d 450, 465, 324 N.E.2d 113, 124 (1974), *appeal dismissed for want of subst. federal question*, 421 U.S. 973, 95 S.Ct. 1972, 44 L.Ed.2d 464 (1975). Since the sanctions generally come into play in a large scale strike, where unions are involved and where large numbers of affected employees share a common interest, the employees penalized under the law are likely to enjoy the benefits of organizational support and legal representation. *See, e. g., Brown v. New York City Transit Authority*, 80 Civ. 2912 (S.D. N.Y. June 3, 1980) (26,000 employees filed affidavits opposing imposition of penalties). *Compare Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

A second factor noted in the cases is the "statutory direction to permit immediate recourse to review under N.Y.C.P.L.R. Article 78," *Sanford v. Rockefeller, supra*, 35 N.Y.2d at 566, 364 N.Y.S.2d at 464, 324 N.E.2d at 124, a "convenient and readily available device," *id.* at 563, 364 N.Y.S.2d 450, 324 N.E.2d 113. Rather than laboring under the obligation to exhaust further administrative remedies, employees penalized pursuant to the Taylor Law have immediate access to judicial review of the chief executive officer's disposition of their objections. Thus the moderate and reversible nature of the Taylor Law sanctions, *see Sanford v. Rockefeller, id.* at 564, 364 N.Y.S.2d 450, 324 N.E.2d 113, the likelihood that penalized employees will be organized and represented and the immediate recourse to Article 78 review are factors indicating that the procedures are not an intolerable burden or imposition on the rights of the employees. *Compare Gibson v. Berryhill, supra*, 411 U.S. at 577 & n. 16, 93 S.Ct. at 1697 (value of *de novo* review mitigated by likelihood of irreparable injury).

The second consideration recommended by the *Hortonville* analysis, the State's interest in the established Taylor Law procedure, has been discussed at length in previous unsuccessful attacks on the Taylor Law, *see, e. g., Tepper v. Galloway, supra; Sanford v. Rockefeller, supra* at 564–66, 364 N.Y.S.2d 450, 324 N.E.2d 113. The plaintiffs here attack one part of a scheme of sanctions and procedures which has been found to be a reasonable device for the achievement of a legitimate governmental need. *See Sanford v. Rockefeller, supra; Brown v. New York City Transit Authority, supra.* This entire scheme serves to combine a measured deterrent to mass strikes by governmental employees with immediate access to judicial review for individual employees. *Sanford v. Rockefeller*, 35 N.Y.2d at 565–66, 364 N.Y.S.2d 450, 324 N.E.2d 113. As the New York Court of Appeals found in *Sanford v. Rockefeller*,

> ■f hundreds, and more likely many thousands of administrative hearings are to be required automatically, prior to the imposition of the penalties afforded by the statute, with the usual resort to judicial review after the administrative hearing, the government service could be tied up internally for years and at great expense. . . . Obviously, such a system is not a deterrent but could well become an added weapon in the hands of those who might seek to bring pressure on the public employer.

35 N.Y.2d at 565, 364 N.Y.S.2d at 464, 324 N.E.2d at 124; *see Brown v. New York City Transit Authority, supra.*

Under the circumstances, I find that the plaintiffs' attack on the constitutionality of the Taylor Law on its face fails.

## C. *The Eighth Amendment Claim*

■ The plaintiffs contend that the suspension of tenure rights, which was a sanction available against the plaintiffs although subsequently deleted from the Taylor Law, *see Laws of New York*, L. 1978, c. 465, § 1 (July 5, 1978), represents a cruel and unusual punishment. The plaintiffs acknowledge that the courts in both *Sanford* and *Tepper* reviewed the Taylor Law sanctions, and found them to be neither drastic

nor irreversible. But plaintiffs contend that those holdings are not on point since they were concerned with the procedures employed more than with the simple assessment of the harshness of the sanctions.

■ I find no merit in the plaintiffs' contentions. The Eighth Amendment limits the power of the legislature to fashion punishment for violation of criminal statutes. *See Ingraham v. Wright*, 430 U.S. 651, 666–71, 97 S.Ct. 1401, 1409–12, 51 L.Ed.2d 711 (1977). Furthermore, as noted above, the provision in question has been repealed.

Accordingly, the plaintiffs' complaint against the State of New York is dismissed in all respects.

SO ORDERED.