OPINION OF THE COURT
John A. Milano, J.
issue:
Are the current provisions of the Housing Maintenance Code set forth in subdivision (k) of section D26-51.01 of the Administrative Code of the City of New York, as amended, for the imposition of civil penalties for heat and hot water violations violative of the due process requirements of the Fourteenth Amendment and do the notice requirements prescribed by the statute meet the “reasonable notice” test of procedural due process?
proceedings:
The Department of Housing Preservation and Development (DHPD) brought on this proceeding, by order to show cause, for the imposition of civil penalties, in the amount of $250 per day per violation in regard to inadequate hot water which was returnable on January 5, 1983. In response thereof, the respondent landlord moves to dismiss this proceeding on the grounds that the presumption of continuous violation and the inadequate notice provisions of subdivision (k) of section D26-51.01 result in an unconstitutional imposition of penalties without due process of law.
*991 facts:
DHPD made an inspection at premises 35-48 35th Street, Astoria, in the Borough of Queens on December 16, 1982 pursuant to a complaint of inadequate heat. The outside temperature precluded any findings of inadequate heat but the inspector found a violation of inadequate hot water at a temperature of 90 degrees in apartment 2G. (The minimum legal temperature required is 120 degrees.) The inspector claims to have placed a violation notice (IV-1B) sticker on the (IV-l)-card located in the hallway of said premises. This was the only notice given by DHPD to the said respondent. No other notices were mailed or served on the landlord or his agents. Subsequently, on January 4, 1983, the landlord received by mail an order to show cause requiring him to appear in court on January 5. The landlord visits the premises daily and never saw the (IV-1B) sticker on the (IV-1) card in the hallway or elsewhere. Nor did the landlord’s agent see the said notice. The landlord never received any complaints from any of the tenants in regard to inadequate hot water. That the landlord never knew of the said violation until he received the order to show cause on January 4, 1983. Further the landlord had installed a new boiler and hot water system in November of 1982.
STATUTORY CODE:
The respondents, by their attorneys, have challenged these proceedings and these challenges can only be understood within the context of the pertinent provisions of the Housing Maintenance Code. The applicable statute in this case is Local Law No. 76 of 1981 of the City of New York (Administrative Code, § D26-51.01, subd [k], as amd), effective November 1,1981. The amended law creates a legal presumption that the condition constituting the violation continues from the day when notice of same is affixed in a conspicuous place on the premises. The notice is designated (RHM form IV-1B 11/81) and is a white peel-off sticker five inches long and one and three-eighths inches wide with a one-eighth inch red horizontal stripe at the top and said notice states:
*992 “Immediately Hazardous Violation(s) (Class C) were filed pursuant to Article 17 of the Housing Maintenance Code on —date— for: (Check Box) Inadequate Heat (Check Box) Inadequate Hot Water; Penalty for failure to correct is $250. a day from date reported. (Check Box) Illegal Devices on Heating System; Penalty for failure to correct is $25. per day/minimum $1,000. from date reported. Signature RHM Form IV-1B (11/81).”
ARGUMENTS OF THE RESPONDENTS:
The respondents argue that in order to overcome this legal presumption they must demonstrate that they corrected the violation on a given date. But,- in many cases and in this instant case, the owner never knows of the violation until he receives the order to show cause requesting the court to impose penalties of $250 a day. That the owner is thus subject to severe penalties without notice or opportunity to cure. He can only overcome the presumption by testifying that he or his agent checked the hot water after the DHPD inspection and found the temperature within the legal limits. If the posted IV-IB sticker was subsequently removed by a third party without the knowledge of the owner or agent who never saw it and the violation is a condition located in an apartment in the premises not under the control of the owner, it places him in an untenable position of trying to rebut the presumption without having received “reasonable notice” of the violation. The respondents contend that the mere posting of an IV-1B sticker in the public areas is inadequate notice at best. On the return date of the order to show cause, the owner stated in court that he tested the water the night after he received the show cause petition but was not able to testify about the conditions in an apartment over which he had no control or knowledge some 20 days after the December 16 inspection. That he now faces a potential fine of $5,000. That the practical effect of the amended notice provisions is to impose severe penalties without adequate and reasonable notice. That as a result, the presumption of continuous violation and inadequate notice provisions of the statute constitute an unconstitutional imposition of penalties without due process of law.
*993 CONTENTION OF DHPD
The petitioner argues that the challenged statutory provision of chapter 26 (tit D, § D26-51.01, subd [k], pars [1], [2]) of the Administrative Code of the City of New York (Housing Maintenance Code) is a valid and constitutional exercise of the police power. That the failure on the part of landlords to provide heat and hot water in tenant-occupied dwellings during the winter months is immediately hazardous to the health and safety of the occupants and therefore increasing the potential civil penalty from $25 to $250 per day and having the penalty run by a statutory presumption of continuance of the violation from the date it is placed and notice of it affixed to a conspicuous place on the premises, should act as a strong deterrent to this conduct.
Petitioner submits that the Committee on Housing and Buildings of the New York City Council (Intro 1336, 1982 [Appendix II]) noted that it was necessary to create an explicit statutory presumption of continuance of the violation because Judges had refused to accept the common-law presumption in applying a per diem penalty provision and had required the petitioner DHPD to prove that the violation existed on each and every day after notice of the violation. And additionally, that the presumption is proper and reasonable because there is a rational connection between the fact proved and the ultimate fact presumed.
Petitioner further submits that in the context of administrative imposition of fines, there is no requirement that there be a notice of a violation and opportunity to cure before the imposition of a penalty, unless the statute specifically requires it and that the same principle is applicable where fines are imposed through court action. Thus petitioner concludes that DHPD’s posting of a notice at the building and subsequent notice of a hearing before this court and an opportunity to be heard meet the requirements of the due process clause.
due process considerations:
The owner is required by statute to supply hot water (120 degrees) from 6:00 a.m. to 12 midnight and heat to all tenants at specified temperatures when the outdoor temperature falls below a specified level by means of a heating *994 system free of an illegal device. (Administrative Code, § D26-17.03.) The city, acting through DHPD, has the power and duty to enforce that statute which was enacted to safeguard the life and health of tenants and the community at large. It has determined that its interests and that of the tenants and public would most effectively be protected by imposing severe monetary penalties upon those who disobey the law. (Administrative Code, § D26-51.01, subd [k].) While heat penalties run from the date of posting of the notice, they cannot be imposed unless a civil proceeding is instituted. In bringing on such a proceeding, the owner is provided with notice of the charges against him and an opportunity for a judicial hearing. (Administrative Code, ch 26, tit D, arts 17, 51, 53; CCA, § 110, subd [a], par [9].) Generally, the Fourteenth Amendment standard for procedural due process requires adequate notice and a reasonable opportunity to be heard before a penalty is imposed. But in balancing the government interest against the nature and extent of the individual’s deprivation, the courts have found that there are situations which require no “prepenalty” hearings such as public employees who engaged in a strike contrary to the injunctive provisions of the Taylor Act (Civil Service Law, art 14; Matter of Sanford v Rockefeller, 35 NY2d 547). And, in the heavily regulated industry of horse racing, the court found that a provision for a “postpenalty” hearing was sufficient in determining the winner of a race. (Matter of Beikrich v New York State Racing & Wagering Bd. [Div. of Harness Racing], 48 AD2d 954.) And, where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process if the opportunity given for the ultimate judicial determination of the liability is adequate. (Phillips v Commissioner, 283 US 589, 596-601.) And this court is aware that the instant procedure involves none of the special irreversible economic hardships requiring prior judicial proceedings as does wage garnishment (Sniadach v Family Fin. Corp., 395 US 337), or termination of public assistance payments (Goldberg v Kelly, 397 US 254). Judge Breitel speaking for the Court of Appeals in a case involving a CPLR article 78 proceeding to declare unconstitutional the Emergency Repair Program of the New York *995 City Department of Health (Matter of 300 West 154th St. Realty Co. v Department of Bldgs. of City of N. Y., 26 NY2d 538), stated that only two issues merited discussion. They involved the sufficiency of notice afforded an owner involving an order to abate a nuisance and the postponement of adjudication of the owner’s liability for repairs until after his tenants had been ordered to pay their rent to the department to satisfy the repair claims. Although ruling that mere postponement of the judicial inquiry is not a denial of due process, the court ruled that the owner was entitled to notice and an initial opportunity to effect necessary repairs.
“Occasions may arise requiring abatement of a nuisance without any prior notice to those otherwise charged with the duty to abate, when the giving of notice is not feasible. Reasonable notice must be given, wherever possible, however, to provide a landlord, or other party, opportunity to abate the nuisance not created by him or of which he may not have, and could not have, actual notice by reason of control or operation, in a manner causing the least disruption to the premises and minimizing the costs which he must bear ultimately. The blockage of tenant’s toilet, occurring entirely within the tenant’s apartment, is such a case. Even if a blocked toilet causes such ‘imminent peril’ as to justify emergency abatement procedures (see § 564-20.0), a telephone call to the landlord informing him of the order would not only be a reasonable form of notice, but might conceivably expedite the repair.” (Supra, p 543; emphasis added.)
analysis:
This court agrees with the petitioner that every legislative enactment carries a strong presumption of constitutionality and that questions as to wisdom, need or appropriateness are for the Legislature and not the courts. In the promulgation of the statute in question in 1981 by the city council, this court recognizes that stern measures were and are needed to protect tenants deprived of essential services threatening their very health, life and well-being and that such legislation in promoting the general welfare of the community was and is a proper exercise of the police *996 power. This court also recognizes that the rebuttable presumption of continuing violation enacted by the city council in 1982 (Intro 1336) passes constitutional muster and is needed because: “Since the enactment of Local Law No. 76 of 1981, litigation experience has shown that unless the law specifically carries this presumption, some judges demand that plaintiffs prove that the violation existed on each and every day after notice of the violation. This burden of proof exacts too great a hardship from complainants and, therefore, the presumption is explicitly laid down in these amendments.” (Excerpt from petitioner’s memorandum of law.) What then, is the crux, which in the judgment of this court, renders the procedure under subdivision (k) of section D26-51.01 of the Administrative Code, as amended, to be fatally flawed?
On October 1, 1981, the Mayor approved Local Law No. 76, effective November 1, 1981, which added a new subdivision (k) to section D26-51.01 of the Administrative Code which increased the fine for failure to provide adequate heat and/or hot water to $250 per day for each violation from the date the violation is placed until the date the violation is corrected. The new subdivision (k) provided for two notices to the owner, agent or other person responsible for the correction of violations, the first notice to be affixed in a conspicuous place on the premises (IV-1B) sticker, identifying the condition constituting the violation, the date the violation was reported and the attendant penalties. The second notice pursuant to the statute, was to be mailed to the person in charge of the premises or to the person last registered with the department as the owner or agent. This second notice, inter alia, identified the condition constituting the violation, the provision of law applicable thereto, the department’s order number, the classification of the violation according to its degree of hazard and the amount of the penalty. The statute further provided that the owner would be responsible for the correction of all violations placed pursuant to chapter 26 (tit D, art 17) of the Administrative Code but also provided for opportunity to defend or mitigate his liability in an action for civil penalties brought by the DHPD. On November 10, 1982, Intro 1336 became effective which amended section D26 *997 51.01 (subd [k], pars [1], [2]). A new presumption of law was added providing that the condition constituting a violation continued after the affixing of the notice. But the requirement of a “second notice” of the violation to be mailed to the owner was deleted from the new law and only the first notice (IV-1B sticker) was retained. No justifiable reason was given for the elimination of the second notice by mail in any preamble to the proposed local law especially in view of the added legal presumption and the apparent necessity of retaining the notice by mailing as a needed safeguard. The practical effect of the amended statute is obvious. In the instant case before this court, a violation was placed on December 16, 1982 for lack of adequate hot water in an apartment not under the control of the owner. The minute the IV-1B was affixed, the $250 penalty began to toll. Since DHPD’s enforcement program in heat-related matters is affected with a public interest and since lack of adequate hot water or sufficient heat in a building poses a danger to the tenants in the building, it is in the DHPD’s interest to have that condition promptly and expeditiously corrected by the owner. Reasonable and adequate notice therefor serves two vital purposes — the first to place and report the violation and to “trigger” the presumption (thus making it unnecessary to send the inspector back for additional inspections since the burden of rebutting the presumption is shifted to the owner). The second to alert the owner to the violation so that the condition may be investigated and steps taken to correct the violation and to ensure future delivery to aggrieved tenants of vital services as defined by law.
The removal from the statute of the second notice by mail in the judgment of this court severely curtails these vital purposes enumerated above and in fact can in many instances work an injustice not only on the owner, who may be faced with a large penalty and unable to properly and adequately defend but on the tenant who is entitled to prompt and expeditious repairs and restoration of all vital services by an owner acting in good faith.
CONCLUSION
This court cannot conceive that requiring a second notice by mail as previously mandated by Local Law No. 76 of *998 1981 of the City of New York would constitute an onerous burden on the DHPD. And this court reminds the said agency that there is no legal bar to reinstituting forthwith the second notice by mail to ensure the efficacy and viability of the statute. But without the implementation of such a requirement, this court must reluctantly hold that the present procedure of notice pursuant to subdivision (k) of section D26-51.01, as amended, does not meet the reasonable notice test of procedural due process and, accordingly, the court dismisses the petition with prejudice.