Breitel, J.
Two proceedings were originally brought under CPLR (art. 78). In the Concord proceeding, on behalf of landlords of rent-controlled buildings, to prevent the New York City Department of Rent and Housing Maintenance from reducing maximum rents because of decrease in essential services during a labor strike, petitioners appeal. Of the two, this is the only proceeding before the court. The underlying contention is that the city agency’s threat to reduce rents undermined the bargaining position of the employer landlords. The narrow issue is whether the Appellate Division properly dismissed petitioners’ appeal after the strike settlement mooted the substantive issues.
Special Term dismissed the petition seeking to declare the city agency without authority to reduce rents and for an injunction. It found that the city agency was empowered to reduce rents if essential services were decreased as a result of a labor strike, and that any attack on the procedures employed or the extent of proposed rent reductions was premature since no maximum rents had yet been reduced. The Appellate Division unanimously dismissed the appeal on the ground that since the strike was over the controversy had become moot, noting, however, that it did not necessarily agree with Special Term on the merits.
The companion Bosart proceeding, not now before this court, attacked the city agency’s practice of hiring striking union employees at wages they were demanding to perform essential services, and then charging the landlords for the wages paid. *312 In the Bomrt proceeding Special Term prohibited the city from taking over and managing landlords’ properties, and in particular from hiring striking union members and charging petitioners. Special Term found that the agency had not complied with certain procedural requirements, and, without statutory authority, had in effect taken private property and interfered with a lawful labor dispute. The city did not appeal, and the Bomrt proceeding, although included in the caption, was not before the Appellate Division and is not before this court.
In the Concord proceeding there should be a reversal. The substantive issue is important, and is likely to recur as similar labor disputes arise. The Appellate Division, therefore, should have entertained the appeal rather than dismissing it as academic.
Petitioners are members of the Bronx Bealty Advisory Board, the employer bargaining agent in negotiations with Local 32E Building Service Employees International Union. On September 14, 1970, the then collective agreement between the employers and the union expired. The union struck on September 15. Shortly thereafter, the agency sent notices to landlords initiating rent reduction proceedings. The notices cited lack of essential services, in particular garbage collection, hot water, and elevator service, and that rents were subject to a scheduled reduction ranging as high as 80%.
The Concord petition was verified September 22, 1970, seven days after the strike began, but before any hearings had been held or orders reducing rents issued. Bent reduction orders were issued later; the strike was settled and the orders revoked, however, before the appeal could be heard.
On the merits, not before the court, petitioners contend that the agency lacked authority to reduce maximum rents where a labor dispute and not a calculated evasion of maximum rents by the landlord was responsible for the decrease in essential services (see Administrative Code of City of New York, § Y515.0, subd. a, par. [1]). They also contended that the proposed rent reductions were punitive and coercive.
This court has recently held on two occasions that in a proper case the Appellate Division should not have dismissed an appeal as academic “ when the underlying questions are of general . interest, substantial public importance and likely to arise with *313 frequency ” (Matter of Gold v. Lomenzo, 29 N Y 2d 468, 476; East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 133; cf. Matter of Bell v. Waterfront Comm., 20 N Y 2d 54, 61; Matter of United Press Assns. v. Valente, 308 N. Y. 71, 76, cases in which the retention of jurisdiction by the Appellate Division has been approved despite mooting of important recurring public issues). Petitioners argue that the agency, by arrogation of jurisdiction, threatened reductions in rent in excess of the expense saved by decreasing services. The threatened hardship, it is said, forced landlords to settle on the union’s terms. If these assertions'are supported, a difficult and important question would be reached whether the agency’s action was an impermissible favoring of one side or the other in the labor dispute. In this sense it may be necessary to reach not only the question of naked authority to reduce rents but also by what formula rents should be adjusted, if the interference is to be as neutral as the circumstances permit. The city contends, as was held at Special Term, that the issues raised regarding agency procedures and the formula for reducing rents were raised prematurely. Whether they were or not, in whole or in part, is also an important question, especially if it were true that the mere threat of drastic agency action undermines or destroys the collective bargaining process, and substitutes government “muscle” for the economic forces in the labor negotiation.
The issue of the agency’s power to reduce maximum rents during labor disputes has been raised before; but never resolved.[1] The same issue will probably recur if the present collective agreement be terminated earlier by option after April 1,1972,[2] or, in any event, on September 14, 1973. The identical issues raised by this petition, if not determined, could recur *314 like clockwork on every expiration of a collective agreement. Regularity or frequency of recurrence are for this purpose the same. It is important that the purported effectiveness of agency conduct in collapsing employer resistance to settlement is also effective in preventing judicial resolution of the issues except after events have mooted the consequences.
There are other elements in the case. If it should appear that the appropriate relief may not be granted in an article 78 proceeding, the Appellate Division has power to entertain the matter as one for a declaratory judgment (CPLR 103, subd. [c]; Matter of Lakeland Water List. v. Onondaga County Water Auth., 24 N Y 2d 400, 408-409). If it be necessary, the Appellate Division may remand for a hearing to determine the issues of fact, including the economic impact of the agency procedure and scheduled reductions. A court may find the matter appropriate for the fashioning of a remedy or of principles to safeguard the rights of tenants and prevent landlords from profiting from a protracted strike, at the same time that the agency would be prevented, if that should prove to be the case, either in motive or in effect, from interfering unduly and without neutrality in the collective bargaining process.
Controlled rental housing is in this respect like any other regulated industry. It may be\ so much at the mercy of the regulating agency that, as landlords allege, their capacity to negotiate is undermined by the kind or extent of interference described in the allegations. On the other hand, it is also true that tenants should not be required to pay for services they do not receive. If that should be allowed, not only would the tenants suffer a deprivation against which the statutes are directed, but the effect would be to subsidize the landlords in their resistance to labor demands. Neither outcome is desirable or even tolerable. If ever a situation called for a measured, economically supportable solution, a labor strike in rent-controlled housing is such a situation. Agency interference is justified, assuming that it has authority to reduce maximum' rents in a labor dispute, only if its interference in motive and in effect is as neutral as the circumstances permit. The issue is of paramount public importance, demonstrated by the very importance of rent regulation, and the many State and Federal statutes *315 and systems designed to provide a neutral framework for employer-employee collective bargaining.
In remanding the matter to the Appellate Division that court should continue to have some measure of discretion on the question of mootness. Unlike Matter of Gold v. Lomenzo (29 N Y 2d 468, supra) this court is not in a position to determine the substantive issues finally, and new events, not now foreseeable, bearing on mootness may arise, in connection with the collective agreement or the statutes, rules, and regulations applicable to buildings under rent regulation. Consequently, it is important that the Appellate Division not be too restricted.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remanded to the Appellate Division for a determination on the merits.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
Order reversed, without costs, and the matter remitted to the Appellate Division for a determination on the merits.

. Appellants state in their brief, and it is not contradicted by respondents, that on two occasions, the first time in May and June of 1967 and the second time in June and July of 1970, there were strikes, followed by rent reduction notices, followed by lawsuits. The lawsuits raised substantially the same issues as raised now, but they were never resolved due to an “ agreement ” with the union not to prosecute (see West 87th St. Corp. v. Berman, proceeding instituted June 3, 1967 in Supreme Court, Kings County, Index No. 6840/67).

. See New York Times article of April 1, 1972 (at p. 31, col. 4) forecasting possible termination of the collective agreement and a strike in multiple dwellings in the Bronx.