In the Matter of JOHN DART, on Behalf of Himself and All Others Similarly Situated, Appellant, *v.* CHARLES F. HOWELL, as Supervisor of the Town of Lansing, et al., Respondents.

Third Department, June 6, 1974.

*Wiggins, Tsapis, Holmberg & Gersh (David B. Gersh* of counsel), for appellant.

*Mazza, Williamson & Clune (Robert I. Williamson* of counsel), for Charles F. Howell, respondent.

*Helen Amdur* for Amdur, Smidt & MacAdam, respondents.

SWEENEY, J. This is an appeal from so much of a judgment of the Supreme Court at Special Term, entered October 25, 1973 in Tompkins County, which sustained a petition for village incorporation of a territory in the Town of Lansing determined by the Supervisor of said town to be in full compliance with article 3 of the Village Law, ordered a temporary restraining order vacated, and dismissed petitioner's application in a proceeding pursuant to article 78 of the CPLR.

In June of 1973 a petition was submitted pursuant to article 3 of the Village Law to the Supervisor of the Town of Lansing

seeking to incorporate a portion of the town into a village. A hearing was held, written objections presented and the Supervisor thereafter rendered a decision that the objections were without merit and the petition complied with the statute. From this decision the petitioner herein, individually and on behalf of all of the owners of real property located in the territory sought to be incorporated as a village, instituted an article 78 proceeding to vacate such determination and restrain respondents from holding the required referendum on the question of incorporation of the village. Special Term correctly treated the article 78 proceeding as an action for declaratory judgment, as the question of the constitutionality of section 3–316 of the Village Law (now § 2–216) was raised.

Primarily, petitioner challenges the statutory provision which limits the right to vote in such referendum to each resident in such territory qualified to vote for town officers. Petitioner argues that the denial of the franchise to nonresident property owners in the area sought to be incorporated as a village who are "primarily interested" in the outcome of such referendum, violates the Equal Protection Clause of the Fourteenth Amendment. We do not agree.

We have carefully analyzed the many recent Supreme Court cases dealing with the question of the validity of a State statute which, in any one of a variety of ways, limits the right to vote in an election. We are aware of the principle that in determining whether or not a State statute violates the Equal Protection Clause, the court must consider the facts and circumstances surrounding the law, the interest which the State claims to be protecting and the interest of those who are disadvantaged by the classification excluding them from voting. (*Williams* v. *Rhodes*, 393 U. S. 23, 30.) Such statutes must be given "close and exacting examination." (*Kramer* v. *Union School Dist.*, 395 U. S. 621, 626.) "Any restriction, be it age, duration of residency or residency itself which would have the effect of denying the franchise to any group, in order to muster constitutional scrutiny 'must be * * * "necessary to promote a compelling state interest"'" [cases cited]." (*Atkin* v. *Onondaga County Bd. of Elections*, 30 N Y 2d 401, 404.)

Generally, a qualified voter in New York must be a citizen who is a resident of the particular political subdivision in which the election is being held. (N. Y. Const., art II, § 1; Election Law, § 150.) The issue is thus narrowed to a consideration of whether New York's bona fide residence requirement advances

a substantial and compelling State interest in disenfranchising the property owner who is not a resident, but who has a primary interest in the outcome of a referendum on village incorporation. This issue was not before the court in either the *Kramer* case or the *Atkin* case. In our view, there is a sufficiently substantial State interest which makes such residency requirement necessary and the pertinent constitutional and statutory provisions are the only reasonable means of achieving the required objective. That each State has the power to impose reasonable restrictions on the availability of the ballot has never been questioned. (*Evans* v. *Cornman*, 398 U. S. 419; *Carrington* v. *Rash*, 380 U. S. 89; *Pope* v. *Williams*, 193 U. S. 621.) We believe, as suggested in *Dunn* v. *Blumstein* (405 U. S. 330, 343–346), that an appropriately defined and uniformly applied bona fide residence requirement is " necessary to preserve the basic conception of a political community ". Those excluded from voting in the referendum here in question are not " otherwise qualified voters." There is no attempt to disenfranchise a segmented group which is otherwise qualified by age, literacy and citizenship. Such qualifications, in addition to that of residency, form the framework of political representation of the people. A residency requirement is necessary to define the electorate and properly administer the election. (*Kollar* v. *City of Tucson*, 319 F. Supp. 482, affd. 402 U. S. 967.) We find nothing in the constantly expanding body of pertinent decisional law constraining us to strike the bona fide residence requirement from the State Constitution and other statutes involved in this case. Nor are we persuaded by any of the arguments advanced by appellant that the overriding State interest should not prevail. Under the circumstances here presented, we hold, therefore, that the New York statutory scheme which requires residency as a basic qualification for the electoral franchise does not violate the Equal Protection Clause. (See *Matter of Gibbs* v. *Howell*, 45 A D 2d 774.)

We find no merit in petitioner's other contentions.

The judgment should be affirmed, without costs.

HERLIHY, P. J., COOKE, KANE and MAIN, JJ., concur.

Judgment affirmed, without costs.