OPINION OF THE COURT
Robert E. Fischer, J.
This CPLR article 78 petition seeks judgment directing respondents to pay over salary withheld from petitioners following a strike at the Elmira Correctional Facility (the Facility). Respondents’ numerous affirmative defenses and objections in point of law require review seriatim. The facts necessary for our determination are not in dispute.
When correction officers engaged in an economic strike during the period April 19-May 3, 1979, the New York State National Guard with supervisory administrative personnel from the Correction Department operated the Facility, while State and local law enforcement agencies provided support and external protection.
*882 Petitioners, civilian employees of the Correction Department, did not work during the strike period for various reasons. Thereafter, each of them received a notice from the Director of the Governor’s Office of Employee Relations (the Director) advising that it had been “determined that you have engaged in a strike” in violation of subdivision 1 of section 210 of the Civil Service Law (the Taylor Law) during the period above noted, requiring application of the penalty provisions of that law — (§210, subd 2): “This penalty is deduction from the employee’s salary of an amount equal to twice the daily rate of pay for every day or part thereof during which he was in violation. In computing such deduction, credit shall be allowed for amounts already withheld from such employee’s compensation on account of such day or days. In addition, an employee may be subject to appropriate disciplinary action.” Thereupon," there was deducted from petitioners’ salary checks twice their daily rate of pay for all of the days of the strike.
After petitioners timely filed their objections, the Director responded in March, 1980, with separate determinations (Civil Service Law, § 210, subd 2, par [h]) based on the objections filed.[1] The Director determined that:
(1) Some of the petitioners had not engaged in a strike on any of the days in question;
(2) Some of the petitioners had not engaged in a strike on some of the days in question, and they had raised questions of fact which, if resolved in favor of these petitioners, would establish that they had not engaged in the strike on the remaining days; and
(3) The remaining petitioners had raised questions of fact which, if resolved in their favor, would establish that they had not engaged in the strike on any of the days in question.
Although the Director’s response advised that hearings would be held for those petitioners who had raised questions of fact for all or some of the days in question, no hearings have been scheduled to date.
*883 Subsequent to the Director’s determinations, those petitioners determined to have not been engaged in the strike — for all of the days (category 1 above) or some of the days (category 2 above) — received a refund of salary equivalent to one day’s pay for each such day. The additional day’s pay withheld was not refunded to those petitioners pending individual determinations as to other reasons for their absence from work on those days.[2] On May 9, 1980, petitioners demanded the refund of the additional day’s pay for each of the days wherein the Director had determined that they had not engaged in strike. This proceeding was commenced after their demand was rejected on May 16, 1980.
OBJECTIONS IN POINT OF LAW AND AFFIRMATIVE DEFENSES

As to whether the petition states a cause of action:

As an objection in point of law as well as a first affirmative defense, the Attorney-General essentially alleges that the petition lacks specificity as to each individual petitioner, that it is conclusory in nature, that documents in the possession of the petitioners are not attached, that the petition contains insufficient facts upon which to posit a determination, and that the petition therefore fails to state a cause of action.
We disagree. It is now accepted doctrine that “[m]odern pleading rules are ‘designed to focus attention on whether the pleader has a cause of action rather than on whether he has properly stated one’” (Rovello v Orofino Realty Co., 40 NY2d 633, 636). On review of the petition, and in consideration of the admissions in the answer, we have no difficulty perceiving an action pleaded by petitioners. The issue for our consideration is one of law based on the factual submissions now before us, and the factual omissions noted by the respondents are merely incidental and irrelevant to that determination. Consequently we reject the respondents’ objection and the first affirmative defense directed to the sufficiency of the petition.
*884 As to joinder of petitioners in a single proceeding:
As an objection in point of law, the Attorney-General also contends that these petitioners are improperly joined together since each petitioner “presentís] different fact questions”.
It is clear that petitioners present a common question of law — whether they are entitled to refund of salary withheld for those days on which determinations have already been made they were not on strike. Joinder in a single proceeding is therefore permitted at petitioners’ option (CPLR 1002, subd [a]; Matter of De Lury v Beame, 49 NY2d 155; cf. People ex rel. Cardona v Singerman, 63 Misc 2d 509, 510).
The “different fact questions” for the individual petitioners alluded to by respondents, related solely to their separate reasons for failure to report to work. Although such individual “fact” questions may be relevant in other proceedings to be held, such are not pertinent to the issue of law presented here. Thus, should the present issue of law be resolved in favor of petitioners requiring repayment to individual petitioners which might vary as to each individual, such does not change the character of the law issue common to all, since the accounting aspect may either be clarified on any required submissions (e.g., CPLR 7804, subd [e]), or determined as an incident to any judgment to be entered (CPLR 7806), or, if necessary and in dispute, determined on a trial (CPLR 7804, subd [h]).
Since we perceive neither legal nor factual necessity for petitioners to commence 51 separate proceedings, such objection in point of law is rejected.
As to the exclusivity of the grievance procedures of the union contracts:
As a further objection in point of law, the Attorney-General contends that this court lacks jurisdiction to consider this petition in that the procedures set forth in the applicable union contracts are exclusive remedies.
Section 210 (subd 2, par [h]) of the Civil Service Law not only provides for article 78 review of a declination to refund deductions made subsequent to a strike, but it is because of the availability of judicial review that the con *885 stitutionality of the Taylor Law has been upheld: “Thus, in the somewhat special circumstances of the no-strike provisions of the Taylor Law, by reason of the express procedural provisions of the statute itself, supplemented by the availability of judicial review under the provisions of article 78, the employee is assured of his due process entitlements.” (Matter of Sanford v Rockefeller, 35 NY2d 547, 555-556.)
It has been noted that the grievance provisions in union contracts cannot supplant judicial review when such provisions contravene “strong public policy” (Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899; Mineola Union Free School Dist. v Mineola Teachers Assn., 46 NY2d 568, 571). Further, in the present contracts it is manifest that the parties never intended to have grievance procedures supplant article 78 review as to penalties invoked subsequent to a strike. Thus, the “No Strikes” provision of the contract specifically provides: “Nothing contained in this Agreement shall be construed to limit the rights, remedies or duties of the State or the rights, remedies or duties of PEF [CSEA] or employees under State law.” (Agreements between the State of New York, the Public Employees Federation AFL-CIO [Professional, Scientific and Technical Services Unit], and the Civil Service Employees Assn., Inc. [Administrative Services Unit], 1979-1982, art 6, § 6.3.) Consequently, in view of such exclusion of contractual remedies in strike situations, the respondents’ invocation of the “Grievance and Arbitration Procedures” (Agreements, art 34) and “Absence-Extraordinary Circumstances” (Agreements, §§10.11 [CSEA], 10.12 [PEF]) is of no avail — “Hence, it is manifest that the parties never agreed to submit this dispute to arbitration. Furthermore, even if they had, we believe that arbitration would be violative of public policy, for the no-strike provisions of the Taylor Law are mandatory and exclusive, at least as respects administrative discipline”. (Mineola Union Free School Dist. v Mineola Teachers Assn., 63 AD2d 965, 966, mot for lv to app den 45 NY2d 713.)
Thus, contrary to the Attorney-General’s contention that grievance is the exclusive remedy, it is apparent that *886 article 78 review invoked by petitioners here — mandated by statute and approved as the constitutional safeguard of prehearing monetary seizure (Matter of Sanford v Rockefeller, supra) — is itself the exclusive remedy. As a consequence, the objection premised upon exclusivity of the grievance procedure is rejected.
As to verification of the petition:
The Attorney-General, as a further objection in point of law, urges that since the petition is verified by only 15 of the 51 petitioners, it is defective as to those who did not verify.
CPLR 3020 (subd [d]) provides that a pleading may be verified by at least one of the parties who is acquainted with the facts “if two or more parties united in interest are pleading together”. The phrase “united in interest” refers to the identity of legal rights and interests of the petitioners (Matter of Maniscalco v Power, 4 AD2d 479, affd 3 NY2d 918). Since such unity is present here, all parties need not verify (and see Finn Hannevig & Co. v Frankel, 207 App Div 180, 182). In any event, the remedy for a pleading deemed insufficiently verified is to treat it as a nullity and “[give] notice with due diligence to the attorney of the adverse party that he elects so to do” (CPLR 3022). “Due diligence” has been held to mean within 24 hours, and noting the lack of complete verification some two months later is not timely notice (see, e.g., Matter of O’Neil v Kasler, 53 AD2d 310, 315; Matter of Nafalski v Toia, 63 AD2d 1039). Any failure by all petitioners to verify the pleading is therefore deemed waived by the respondents.

As to the affirmative defenses:

The second affirmative defense alleges that the Governor is not a proper party “since he did not take any action or engage in any conduct concerning this matter.” Additionally questioned is the manner of service on the Governor.
As Chief Executive Officer of the State, the Governor is charged with the statutory duty of making those determinations required by section 210 (subd 2, par [h]) of the Civil Service Law, such being subject to review in an article 78 proceeding. (Civil Service Law, §210, subd 2, par [h].) Although the determinations here were made in fact by *887 respondent Meyer S. Frucher as Director of Employee Relations, the delegation of power and duty to respondent Frucher cannot be “interpreted to enlarge, diminish or otherwise change any power or duty of the governor” with regard to the required determinations (Executive Law, § 653). Since the Governor retains his statutory duties — though exercised by his agent Frucher — he is a proper party to this proceeding.
It is also clear from the affidavit of service submitted that the Governor was personally served with the notice of petition and the petition on September 12,1980, by service on a “person of suitable age and discretion at the actual place of business” (CPLR 308, subd 2) of the Governor — one Sheila O’Brien, an employee in the office of counsel to the Governor, Capitol Building, second floor, Albany. Since the counsel’s suite of offices abuts, and is part of, the Governor’s personal offices — the executive chambers (Executive Law, §2) — and such counsel is the Governor’s personal representative on legal matters attendant to the Governor’s duties (Executive Law, § 4), it is apparent that Ms. O’Brien was a proper recipient of the petition for the Governor at the Governor’s statutory place of business.
The fourth affirmative defense alleges that petitioners have failed to exhaust their administrative remedies in that hearings are still pending in the Office of Employee Relations, and that the union grievance procedure is the exclusive remedy for petitioners’ claims in any event. Having noted the inapplicability of contract procedures to poststrike penalty considerations, we additionally observe that the “exhaustion” concept has already been rejected by our courts: “The statutory direction to permit immediate recourse to review under CPLR article 78 is not restrictive. It is a boon to the affected employee *** he need not ‘exhaust’ any further administrative remedies before going to court for relief.” (Matter of Sanford v Rockefeller, 35 NY2d 547, 566, supra.)
The third and fifth affirmative defenses urge that the Statute of Limitations and laches, respectively, create a bar to this proceeding. The Attorney-General contends essentially that since the strike at the correctional facility terminated in May, 1979, and petitioners’ pay was with *888 held during that month, the commencement of this proceeding in September, 1980,, was beyond the four-month limitation period and, in any event, was inexcusably delayed. Petitioners assert that their demand for payment served on May 9, 1980, was rejected May 16, 1980, this proceeding having been initiated within the four-month period. Petitioners note as well, that the demand was sent after receipt of notices dated March 19,1980, which established their individual statuses and also represented that hearings would be held.
No lengthy discussion is required as to applicability of limitations or laches concepts to this wage litigation. When this proceeding was commenced, hearings had neither taken place nor, apparently, were they scheduled to take place until some time in 1981. Far from being untimely, or inexcusably delayed, this proceeding was commenced even prior to completion of the administrative process contemplated by respondents. As indicated, the “exhaustion” concept is inapplicable to judicial review of Taylor Act determinations (Matter of Sanford v Rockefeller, supra, at p 566), but the failure to exhaust cannot ipso facto create a new bar by causing the limitations perio4 to run when the pay is initially withheld. If that were the case, then the due process characteristics of the Taylor Law relied upon by the majority in Sanford would be totally nullified. Since such is not the case, it is apparent that this proceeding is neither barred nor has it been unduly delayed.
For the same reasons, the sixth affirmative defense — asserting the inability of respondent Frucher to conduct the required “civilian employee hearings, including those of Petitioners” until 1981 — must also be deemed legally insufficient on due process grounds to bar this proceeding.
DISCUSSION
It is petitioners’ primary thesis that for those days for which they have individually been determined by the Director not to have been on strike, there should have been an immediate refund of the penalty — twice the daily rate of pay withheld — rather than only the single daily rate of pay actually refunded; that “twice [the] daily rate of pay” was the penalty imposed prior to any hearing pursuant to *889 section 210 (subd 2, par [g]) of the Civil Service Law, and it having been determined they had not violated the Taylor Law, their employer — the State — was statutorily mandated to refund all sums — i.e., the double penalty — immediately following that determination; that if the employer desired to thereafter withhold pay for any individual petitioner’s absence from work, the employer could seek to do so following normal — as opposed to section 210 (subd 2, par [g]) of the Civil Service Law — procedures.
Respondents’ position is asserted by the Attorney-General: “The regular day’s pay has generally not been refunded because a question of fact has been raised as to whether or not a petitioner was on strike or under the theory of no work, no pay. The Office of Employee Relations has only determined whether or not to only refund the strike penalty portion of the pay and has not made any determination concerning a day’s pay due to an extraordinary circumstance existing at the Elmira Correctional Facility during the strike.”
The relief sought by this petition is restricted both as to the petitioners involved (those in categories 1 and 2 above noted) and as to the sums involved (the additional day’s pay for those days already determined that petitioners had not engaged in a strike). Since article 78 relief is available only after determinations have been made (Civil Service Law, § 210, subd 2, par [h]), those petitioners whose status — in whole or in part — has not been determined by the Director are not entitled to the relief sought. However, since those petitioners are subject to similar determinations at a future date — i.e., after hearings have been scheduled and determinations subsequently made — it becomes apparent that as to those petitioners we should convert the issues to a declaratory judgment cause (CPLR 103, subd [c]; 3001), and we do so sua sponte (see, e.g., Matter of Concord Realty Co. v City of New York, 30 NY2d 308; Matter of Building Contrs. Assn. v Tully, 65 AD2d 199).
The Taylor Law creates the presumption that an employee who is absent from work without permission when a strike occurs “shall be presumed to have engaged in such *890 strike” (Civil Service Law, § 210, subd 2, par [b]). The act further provides that the chief executive officer — here the Governor, acting through respondent Frucher — shall determine the identity of those employees (subd [d]), give notice to the employees and the chief fiscal officer — respondent Regan — of such determination (subd [e]), and within a fixed time period following the determination “the chief fiscal officer * * * shall deduct from the compensation of each such public employee an amount equal to twice his daily rate of pay for each day *** that it was determined” — or presumed — that he was engaged in the strike (subd [g]). The employee may file objections to the determination of his strike status, submitting therewith a sworn affidavit of fact (subd [h]). Thereafter:
(1) If Director Frucher determines the evidence submitted establishes the employee was not on strike, he shall sustain the objection and notify the Comptroller who is required to “refund any deductions previously made” (subd Pi]).
(2) If the Director determines that the evidence “fails to establish that the employee” was not on strike, he shall dismiss the objection (subd [h]).
(3) If the Director determines the evidence “raises a question of fact which, if resolved in favor of the employee, would establish that the employee” was not on strike, he shall appoint a hearing officer during which hearing “such employee shall bear the burden of proof.” The hearing officer then is required to make the determination noted in the above two paragraphs with similar results following his determination based “on a preponderance of the evidence” (subd [h]).
(4) Finally, each one of the determinations made “shall be reviewable” in an article 78 proceeding (subd [h]).
The constitutionality of the Taylor Law in its imposition of the twice-the-daily-rate penalty prior to hearing, and shifting of the burden of proof in the event of hearing, was upheld in a lengthy discussion of due process rights in a public-strike setting in Matter of Sanford v Rockefeller (35 NY2d 547, supra, app dsmd sub nom. Sanford v Carey, 421 US 973). We need not review the rationale expressed in *891 that decision other than to observe that the imposition of penalty prior to hearing was predicated on the need for “prompt action” in order to “secure an important governmental or public interest” (supra, at p 557); that administrative determinations and Taylor Law hearings are but a preliminary “screening” process (p 566), there being available a “full-blown article 78 judicial review” of any determination made (p 554); and finally that “imposition of fines under the Taylor Law is of no consequence [since] [i]n the event of mistake the * * * payroll deductions are restored with retroactive effect” (p 565).
Viewing the facts here, however, we note that instead of restoring the entire payroll deduction retroactively, respondents have refunded half the deduction and then sought to utilize the mechanism afforded under the Taylor Law structure to determine whether the employee was otherwise illegally absent, but without regard to the strike considerations which bring the Taylor Law into play. This they may not do.
The thin thread of due process supporting the procedural structure of the Taylor Law so carefully traced in Matter of Sanford v Rockefeller (supra) is based upon the thesis that a public employee strike may destroy the governmental process. It is the strike which affords the rationale for penalty imposition prehearing and the shifting of proof burdens. But once determined — as here — that the employee did not strike, Taylor Law procedures no longer apply, and the parties are relegated to the contractual procedures or Civil Service Law mechanisms for determination of the loss of wages.
We conclude, therefore, that the payroll deductions made are not separable into a “penalty” day’s portion and a “regular day’s pay”, as respondents contend. Since the penalty imposed was twice the daily rate of pay, that penalty must be immediately restored to the nonstriker — not one half of that amount (see Matter of Committee of Interns & Residents v New York City Health & Hosps. Corp., 80 AD2d 807). Petitioners, therefore, are entitled to the relief sought in this article 78 proceeding (or as plaintiffs in the action as converted to declaratory judgment) in view of respondents’ error of law in withholding the additional day’s pay.
*892 Since the papers submitted do not identify by name those petitioners who are entitled to recovery of moneys or the sums due, nor the petitioners who would be entitled — in whole or in part — to declaratory judgment, the order to be submitted here shall detail those facts. As respondents have more ready access to the data concerned, counsel for respondents shall prepare order within 30 days from the date of this decision and submit to counsel for petitioners for stipulated submission.
If counsel for the parties are unable to agree to the detailed contents of the proposed order, either party may apply on notice for settlement of the order.

. Although his determinations are admittedly separable into three different categories as they affect various of the petitioners, we note that individual petitioners cannot be placed in applicable categories at this stage of the proceedings since the pleadings and attendant papers do not identify the separate status of the individual petitioners.

. Some of these petitioners have apparently received this additional day’s pay premised upon earned leave credits or regularly scheduled vacation time.