OPINION OF THE COURT
Robert E. Fischer, J.
The issues presented arise by petitions which seek to nullify the results of a referendum election held in the Village of Freeville, Tompkins County (the Village), on August 26, 1982. The essential facts are not in dispute.
By resolution dated August 3,1982, the board of trustees of the Village authorized the construction of a sanitary sewer system, including a sanitary sewage treatment fácil- ■ ity, at an estimated cost of $2,200,000 to be paid through issuance of serial bonds. The resolution provided that the bond issue would be reduced by amounts obtained through *986 State and Federal grants-in-aid, as well as moneys obtained from assessments on real property “deemed to be benefited by [these] improvements.”
On pledging the full faith and credit of the Village to pay for these bonds, the board resolved that an annual appropriation would be made for payment of principal and interest due, and that if the assessments on benefited real property were insufficient to meet the sums due, a tax would be levied on all of the taxable real property in the Village for the difference. Among other conditions stated, the resolution was adopted subject to a mandatory referendum.[1]
On August 12, 1982, the village board published in the Ithaca Journal a “Notice of Special Election.” The notice set forth the essential terms of the resolution in the form of a “Proposition” and concluded as follows: “Any person qualified to vote at a general Village election may vote upon the proposition to be submitted at the aforesaid special election, provided his or her name is included in the registration list of electors prepared by the Village Clerk in accordance with the provisions of subdivision 3 of Section 9-902 of the Village Law.”
Subsequent to publication of that formal notice “by Order of the Board of Trustees”, respondents also caused to be published — apparently on their own initiative — an informal statement of “General Information”, a portion of which read:
“3. Q. Who may vote in the referendum?
“A..Residents who have lived within the Village for at least 30 days prior to August 26, 1982 may vote. People who own property in the Village may vote. Corporations and Associations who own property within the Village may vote. Property owners who do not reside in the Village must prove ownership if their name if [sic] not listed on the *987 1982 Assessment Role [sic]. Corporations and Associations must have a certified copy of a resolution from their governing board naming the person who will vote for them.”
Individual nonresident property owners, together with corporations and associations who own real property in the Village, were registered to vote on the issue. However, it appears that a representative of the Central New York Spiritualist Association, Inc. (the Association), was informed that while the Association, together with a member property owner could vote, Association members who were nonresident summer visitors could not vote, although the latter members held property rights in the form of 99-year leases.[2]
The bond resolution was approved in the special election by a margin of 13 votes. Of the 298 total ballots cast, 152 votes were in favor, 139 votes opposed, and 7 ballots were voided. Twenty-two nonresident property owners voted.
Although several irregularities are alleged, the primary contention of the petitioners is that unqualified persons — nonresident property owners, corporations and associations — were registered and permitted to vote contrary to the provisions of section 9-902 of the Village Law and contrary to the qualifications recited in the published “Notice of Special Election” as well.
Prior to addressing this issue, we first consider respondents’ contention that the failure of petitioners to challenge electors prior to the referendum precludes our exercising jurisdiction on these summary proceedings brought after the fact pursuant to section 15-138 of the Election Law.
Structurally, section 15-138 of the Election Law is applicable only to contests for election of village officers (see Election Law, § 15-100, establishing the parameters of Election Law, art 15, and the definitional provisions of Election Law, § 15-102, describing the nature of the election contests; and see, also, L 1978, ch 374, § 1, restricting *988 the applicability of the Election Law per se, interpreted as excluding from the “coverage [of the Election Law] special elections limited to referendum issues” [Matter of La Cagnina v City of Schenectady, 70 AD2d 761, 762]). Consequently, it appears that we are precluded from exercising the summary jurisdiction provided in section 15-138 of the Election Law as to the results of this referendum, but for reasons other than those suggested by respondents (see, e.g., Matter of Nicholson v Blessing, 88 AD2d 958).
Acceptance of that restriction does not, however, end the matter. The controversy presented here is both ripe and justiciable, and we are mandated to forego dismissal if the error is solely one of proper form (CPLR 103, subd [c]).
The underlying contention of petitioners is that the proposition was not submitted to the electorate in accordance with the governing statutes (Village Law, art 9). Such being the case, and with the contingencies remaining in the bond resolution being much less speculative than voter approval (cf. New York Public Interest Research Group v Carey, 42 NY2d 527, 530-531), it is incumbent upon us to convert this summary proceeding (CPLR 103, subd [c]) to one for declaratory judgment (CPLR 3001) in order to properly declare the rights and legal relations of the parties (see Matter of D’Addario v McNab, 41 AD2d 677, 678, affd 32 NY2d 84, 90) and we do so sua sponte (Betzler v Carey, 109 Misc 2d 881, 889, and cases cited therein). Further, since we concur with the position stated by all parties on oral argument that the essential facts are before us, thereby obviating the need for a factual hearing, we shall consider the matter as one for summary judgment (see, e.g., Town of Harrison v County of Westchester, 13 AD2d 708, 709; O’Hara v Del Bello, 47 NY2d 363, 367-368).
Subdivision 2 of section 9-902 of the Village Law states: “Unless the ownership of real property is otherwise required by law as a qualification for voting on a proposition, any person qualified to vote at a general village election may vote upon any proposition submitted at a village election.”
*989 In turn, section 5-102 of the Election Law requires, inter alia, as voter qualifications, residency in the village and individual (not body corporate) status.[3]
None of the statutes of which we are aware treat ownership of real property as a qualification for voting on this bond resolution. Nor are we aware of any statute which permits nonresident property owners — individual or corporate — to be registered as voters, either in a general village election or in a permissive referendum. Finally, the “Notice of Special Election” recited above, specifically stated the voter qualification — “Any person qualified to vote at a general election may vote upon the proposition” — and we are not aware of any other published official notice modifying those qualifications.[4]
Although respondents prepared the “General Information” summary, it is clear that it was not formally authorized by resolution of the board of trustees. The summary, however, was apparently adhered to by the village clerk who, in accordance with the published notice, was required to prepare the registration list of voters in compliance with subdivision 3 of section 9-902 of the Village Law, requiring the clerk to register any “duly qualified elector”. Since the same statute contains the voter qualifications (Village Law, § 9-902, subd 2), it is apparent that both subdivisions of that section must be read together to determine the fair meaning and legislative intent of the section as a whole (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97.) In so doing, it is apparent that the village clerk erred in following the qualifications set forth in the “General Information” summary rather than the statutes unless, of course, some overriding constitutional mandate guided the clerk’s disregard of the statutory requirements for voter qualifications.[5]
*990 Respondents conte,nd that since property owners are fiscally affected by the cost of the sewer project, they should not only be permitted to vote on the bond resolution but that judicial precedents “make that conclusion inescapable”. We do not interpret the precedents cited in that manner. In Ball v James (451 US 355) and Salyer Land Co. v Tulare Water Dist. (410 US 719), the United States Supreme Court approved State statutes which permitted voting by certain landowners. However, the court did not constitutionally mandate that result. Rather, it held that legislation permitting such electors was, within the confines of the facts and the State legislation, not violative of the equal protection clause of the Fourteenth Amendment, and deemed those provisions to be acceptable exceptions to the one-person one-vote principle established in Reynolds v Sims (377 US 533). (See Salyer Land Co. u Tulare Water Dist., supra, pp 726-730; Ball v James, supra, pp 368-371.)
Further, in Wright v Town Bd. of Town of Carlton (41 AD2d 290, 293-294, affd 33 NY2d 977), section 209-e of the Town Law, which restricted voting to owners of taxable real property, was held to violate constitutional standards: “any restriction on the right to vote must be necessary to promote a compelling State interest * * * The general presumption of constitutionally afforded State statutes and classifications if the court can perceive of a ‘rational basis’ for the distinctions made is not applicable to those statutes which deny some resident electors the right to vote * * * No individual may be denied access to the ballot solely by virtue of his tax status” (emphasis supplied).
The rationale of Wright is a far cry from an unofficial, local and private determination to permit nonresident property owners, including corporations and association's, access to the ballot. The real issue here is not whether such property owners can vote. Rather, the issue is whether the voter qualifications set forth in subdivision 2 of section 9-902 of the Village Law are unconstitutionally restrictive. Since a residency requirement is rationally based, as is the *991 individual (noncorporate) status of the proposed elector, we find no reason to deem that State statute violative of the equal protection clause. (See Matter of Dart v Howell, 45 AD2d 47, and Matter of Gibbs v Howell, 45 AD2d 774, both affd without opn 35 NY2d 847.) The public circulation of a privately composed “General Information” sheet cannot create an additional class of electors.
It is further apparent that the information circular was at variance with the official notice. Although written in a somewhat different context, the principle stated by the court in Town of Cortlandt v Village of Peekskill (281 NY 490, 496-497), is applicable: “When the statutes prescribe methods by which propositions * * * shall be submitted, it cannot be left to the discretion of the court to say that substantially no notice whatever is required or that the specific provisions of the statutes may be overridden. There must be some uniformity in matters of this kind. The question is one of legal notice and not one of actual notice”.
Finally, while we note that the number of unqualified voters (22) permitted to vote could obviously have affected the election margin of 13 (see Matter of Ippolito v Power, 22 NY2d 594, 597-598), in this case where a special class was knowingly and purposefully permitted to vote contrary to the statutorily mandated qualifications for voters, the numbers become immaterial: “where we have a statute which is mandatory on its face and when that statute is ignored the election cannot be upheld when attacked in a declaratory judgment action” (Matter of D’Addario v McNab, 41 AD2d, at p 678, supra). And further: “The will of the electors can be expressed only where the electors have received notice of the election, and notice given in manner not authorized by the Legislature is without legal effect. The will of the electors expressed at an election, of which legal notice has been given, may not be defeated by the failure of officials to carry out directions intended to make the machinery of election more effective.” (Matter of D’Addario v McNab, 32 NY2d, at p 88, supra.)
On both grounds, then — voter qualification and disparity in notice — this election must fall. Having considered these issues to be the core of the matter, we have not *992 considered, and do not reach, the other irregularities suggested.
In these petitions converted sua sponte to actions for declaratory judgment, we declare that the bond resolution was not legally submitted to the voters at the election held on August 26,1982; and further declare that an unauthorized class of voters was registered to, and did, vote during that election on the proposition; and further declare that the proposition, therefore, failed to become effective.
Counsel for petitioners may submit separate judgments to reflect the foregoing, making provisions therein for separate awards of statutory costs and disbursements and $20 motion costs, all as certified in a proper bill of costs.

. The referendum was deemed “mandatory” because the board of trustees, on its own motion, determined that the bond resolution should be submitted to referendum vote. The board was authorized to do so (Local Finance Law, § 36.00) with the referendum to be conducted pursuant to the provisions of article 9 of the Village Law (Local Finance Law, § 36.00; Village Law, § 9-908; Municipal Home Rule Law, § 24, subd 1, par b).

. Although the Association contends 13 of its leaseholders could not vote, the Village contends the number is really only 11. Since our determination is not dependent upon this factual difference, we find no need to resolve the difference in calculation.

. Although, as discussed supra, the Election Law per se is apparently inapplicable to this special election, the incorporation by reference of its voter qualification provisions in the Village Law requirements makes that portion of the Election Law applicable to this referendum.

. The notice was presumably published pursuant to the requirements of subdivision 7 of section 9-902 of the Village Law, which appears to incorporate by reference the notice provisions of section 4-120 of the Election Law. (See, also, Election Law, § 15-118.)

. Since no formal resolution, other than noted above, was passed by the board providing for the Village’s “own rules for special elections” (Matter of La Cagnina v City *990 of Schenectady, supra, at p 763), we are not faced with, and do not rule upon, the propriety of such a suggested course. Further, in view of the statutory requirements set forth in the Village Law, and in particular section 9-902, we decline to speculate whether such' a “mini-election law” (as mentioned in La Cagnina) could vary the legislatively mandated qualifications for voters.