In the Matter of ALICE A. AMRHEIN, as Commissioner of Social Services of Suffolk County, Respondent, v ERNEST L. SIG-NORELLI, as Surrogate of Suffolk County, Appellant.

Second Department, December 18, 1989

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Carolyn A. Cairns* of counsel), for appellant.

*E. Thomas Boyle, County Attorney (Caroline Levy* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

In these proceedings pursuant to CPLR article 78, the Commissioner of Social Services of the County of Suffolk challenges the authority of the Surrogate to order her or the Department of Social Services of the County of Suffolk to conduct investigations, including but not limited to home studies and criminal checks, of the petitioners in certain guardianship proceedings brought in the Surrogate's Court pursuant to SCPA article 17.

The facts of the four underlying guardianship proceedings giving rise to the instant proceedings may be briefly stated. In *Matter of Robinson,* the maternal aunt and uncle of the then 15-year-old infant sought appointment as guardians of her person and property within approximately six months of the death of the infant's last surviving intestate parent. In *Matter of Russo,* the maternal grandparents of the two infants, then 9 and 15 years old, sought appointment as guardians of their person and property about one month after the death of the last surviving parent. Pursuant to the terms of that parent's will, the maternal grandparents had been appointed guardians

of the infants but the record does not indicate whether the will had been admitted to probate at the time the petition for guardianship was filed. In *Matter of Pirraglia,* the sister of the then 12-year-old infant sought appointment as guardian of the infant's person and property pursuant to the terms of the last surviving parent's will, which had been admitted to probate about six weeks before the filing of the petition for guardianship. In *Matter of Leonard,* the maternal grandmother of the then nine-year-old infant sought appointment as guardian of his person and property, indicating that the infant's father was then incarcerated pursuant to an indictment charging him with the murder of the infant's mother (the trial was then pending) and the mother's will apparently did not provide for the guardianship of the infant. The infant's father was subsequently convicted of attempted murder in the second degree, upon his plea of guilty, and was sentenced to an indeterminate term of 8⅓ to 25 years' imprisonment.

In all of the aforementioned cases, the infants were residing with the petitioners at the time of the filing of the petitions, and all relatives in equal or greater kinship consented to the appointments.

Upon receipt of the petitions, citations were issued to the Department of Social Services of the County of Suffolk (hereinafter the DSS) to show cause why the petitioners should not be granted letters of guardianship. In each case, the DSS responded by letter indicating that based upon a review of the petition, supporting papers and consents, it neither objected to nor endorsed the petitioners. In *Matter of Russo, Matter of Pirraglia,* and *Matter of Leonard,* it was suggested that the Surrogate appoint a guardian ad litem to protect the interest of the infants involved.

Upon receipt of the DSS responses, the Surrogate, *sua sponte,* and without a hearing, issued interlocutory orders in each case finding, pursuant to Social Services Law § 371, that the infants were "abandoned", and directing the DSS to conduct a complete investigation of the application, including, but not limited to, a home study of the petitioners. With respect to *Matter of Leonard,* a "criminal check" of the petitioner was also ordered.

Thereafter, the Commissioner of Social Services of the County of Suffolk commenced these four proceedings claiming that the Surrogate's orders exceeded "his authorized powers in a proceeding in which he had jurisdiction". In each case,

the Commissioner sought, *inter alia,* a judgment prohibiting the Surrogate from directing her or the DSS to perform the investigations of the petitioners in the guardianship proceedings.

In the underlying proceedings involving *Matter of Robinson* and *Matter of Russo,* the Surrogate served verified answers. The Supreme Court, Suffolk County (Doyle, J.), granted the petitions *(see, Matter of Amrhein v Signorelli,* 132 Misc 2d 1007), noting, in pertinent part, that a child whose parents were deceased, and whose relatives within a third degree applied for letters of guardianship, was not " 'abandoned' " within the meaning of the Social Services Law *(Matter of Amrhein v Signorelli, supra,* at 1010). In the underlying proceedings involving *Matter of Pirraglia* and *Matter of Leonard,* prior to serving his answers, the Surrogate cross-moved to dismiss the proceedings. The Supreme Court, Suffolk County (Doyle, J.), denied the Surrogate's cross motions and granted the petitions on the ground that its determination in *Matter of Amrhein v. Signorelli (supra)* was controlling and barred relitigation of the same issues.

■ These proceedings pursuant to CPLR article 78 in the nature of prohibition were not the appropriate remedy for resolving this dispute between the Surrogate and the Commissioner of the DSS *(see, Matter of State of New York v King,* 36 NY2d 59; *cf., Matter of Holtzman v Goldman,* 71 NY2d 564, 569; *Matter of La Rocca v Lane,* 37 NY2d 575, 578-582, *cert denied* 424 US 968). However, the fact that the proceedings were brought in an improper form does not warrant denial of the requested relief. CPLR 103 (c) permits this court "to entertain the matter[s] as one[s] for * * * declaratory judgment[s]" *(Matter of Concord Realty Co. v City of New York,* 30 NY2d 308, 314).

■ As to the substantive issue, we agree with the Supreme Court that the Surrogate exceeded his authority in the guardianship proceedings. The Surrogate, in appointing a guardian of an infant's person or property, must be satisfied that the interests of the infant will be promoted and the best interests of the infant will be served by the appointment *(see,* SCPA 1707; *Matter of Stuart,* 280 NY 245, 250; *Matter of Gustow,* 220 NY 373). In making his best interests determination, the Surrogate is authorized to conduct a hearing to ascertain the suitability of the proposed guardian *(see, Matter of Caseres,* 67 AD2d 630) and, effective August 3, 1987 (after the date of the orders at issue), the Legislature mandated the DSS to inform

the Surrogate's Court whether the proposed guardian is named in a report filed with the State-wide register of child abuse and maltreatment *(see,* SCPA 1706 [2]).

In juxtaposition to the Surrogate's powers, Social Services Law § 398, in pertinent part, outlines the duties and other enumerated powers of the Commissioner with respect to abandoned children, conferring power on the DSS to investigate alleged abandonment and, if necessary, to bring a proceeding for custody *(see,* Social Services Law § 398 [2] [a]). In addition, in pertinent part, the Commissioner must supervise alleged abandoned children until they are discharged to relatives "within the third degree" *(see,* Social Services Law § 398 [6] [h]). Social Services Law § 371 provides, in relevant part, that *"[u]nless the context or subject matter manifestly requires a different interpretation",* an abandoned child is one who is under 18 years of age, and is abandoned "in accordance with the definition and other criteria set forth in subdivision five of section three hundred eighty-four-b" *(see,* Social Services Law § 371 [2] [emphasis supplied]). As noted, in these guardianship proceedings, the Surrogate used Social Services Law § 371 as a predicate for deeming the infants abandoned, but failed to refer to Social Services Law § 384-b (5). That latter statute provides: "a child is 'abandoned' by his parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed." Applying this definition, we find, as did the Supreme Court, that the infants herein were not "abandoned" within the meaning of the statute* and there is no discernible context or subject matter that manifestly requires a different interpretation.

While the Surrogate is permitted to direct the joinder of the DSS as a party and under appropriate circumstances, to make a finding of abandonment pursuant to the Social Services Law *(see,* Social Services Law § 384-b; *see also, Matter of Anonymous v Olson,* 112 AD2d 299; *Matter of Caseres,* 67 AD2d 630, *supra),* absent the appropriate factual or statutory predicate,

---

* In *Matter of Leonard,* we note that the incarceration of the infant's father, standing alone, was insufficient to warrant a finding of abandonment *(see,* Social Services Law § 384-b).

he cannot utilize the agency as an investigatory tool of the court in making his best interests determination. Under the legislative scheme, if the Surrogate or some other court had found the petitioners for guardianship incompetent or unsuitable, intervention by the DSS might have been warranted, but no such finding was made in these cases. Moreover, the Surrogate is authorized to appoint a guardian ad litem to investigate and report to him prior to making his best interests determination *(see,* SCPA 402, 403, 403-a; *Matter of Caseres, supra)*. While the DSS has a duty to "supervise" abandoned children until they are "discharged" to relatives in "the third degree" (Social Services Law § 398 [6] [h]), it is not required to perform investigations unless the child is abandoned within the meaning of the statute.

With respect to *Matter of Pirraglia* and *Matter of Leonard,* the Supreme Court properly applied the doctrine of collateral estoppel. No new issues of fact were raised in those cases and there existed only the legal question concerning the respective authority of the Surrogate and the DSS *(see, Mihlovan v Grozavu,* 72 NY2d 506, 508).

Accordingly, the judgments are reversed, on the law, without costs or disbursements, the proceedings pursuant to CPLR article 78 are converted into actions for declaratory judgments *(see,* CPLR 103 [c]), and it is declared in each of the actions that in guardianship proceedings pursuant to SCPA article 17, Social Services Law §§ 371, 398 and 384-b (5) do not authorize the Surrogate of Suffolk County to order the Commissioner or Department of Social Services of the County of Suffolk to conduct investigations of the petitioners, including, but not limited to, home studies and criminal checks, where the petitioners are relatives within the third degree and the infant has not been abandoned within the meaning of Social Services Law § 371 (2) and § 384-b (5).

BROWN, J. P., LAWRENCE, KUNZEMAN and KOOPER, JJ., concur.

Ordered that the judgments are reversed, on the law, without costs or disbursements, the proceedings pursuant to CPLR article 78 are converted into actions for declaratory judgments *(see,* CPLR 103 [c]); and it is declared in each of the actions that in guardianship proceedings pursuant to SCPA article 17, Social Services Law §§ 371, 398 and 384-b (5) do not authorize the Surrogate of Suffolk County to order the Commissioner or Department of Social Services of the County of Suffolk to

conduct investigations of the petitioners, including, but not limited to, home studies and criminal checks, where the petitioners are relatives within the third degree and the infant has not been abandoned within the meaning of Social Services Law § 371 (2) and § 384-b (5).