[963 NYS2d 210]

Branic International Realty Corp., Respondent, v Phillip Pitt, Appellant, et al., Respondents.

First Department, April 16, 2013

---

**APPEARANCES OF COUNSEL**

*West Side SRO Law Project*, New York City (*Martha Weithman* of counsel), and *Manhattan Legal Services*, New York City (*Jim Provost* of counsel), for appellant.

*Rosenberg Calica & Birney LLP*, Garden City (*Ronald J. Rosenberg, Lesley A. Reardon* and *Diana Attner* of counsel), for Branic International Realty Corp., respondent.

**OPINION OF THE COURT**

CLARK, J.

█ In this appeal, the primary question is whether respondent Phillip Pitt was a "permanent tenant" as defined in Rent Stabilization Code (9 NYCRR) § 2520.6 (j). We find that the record amply demonstrates that respondent "continuously resided" in a room within petitioner Branic International Realty Corp.'s (Branic) hotel for more than six months. Accordingly, respondent-appellant was a "permanent tenant," as defined by Rent Stabilization Code § 2520.6 (j).

Branic is the owner of a single room occupancy (SRO) rent-stabilized hotel located at 216 West 103rd Street, New York, New York. In 2003, Branic and the New York City Human Resources Administration (HRA) entered into a written "memorandum of understanding" whereby HRA agreed to rent 134 rooms in Branic's hotel to house the homeless.* The agreement provides that HRA would refer "Eligible Persons," i.e. HRA clients in need of emergency housing and eligible for a public assistance shelter allowance, to the hotel. Eligible Persons with income over public assistance were obligated to contribute 30% of that income to the hotel. HRA agreed to pay a nightly rate of $65 for each Eligible Person occupying a hotel room.

---

* The parties dispute whether the HRA/Branic agreement is properly included in the Appendix since it was never produced in the prior proceedings by Branic.

In January 2003, HRA referred Phillip Pitt to Branic for housing under the agreement, and Pitt began residing in room 214 on or about January 10, 2003. From January 2003 until April 2007, HRA paid the nightly rate of $65 on behalf of Pitt. By an April 2007 notice of "CANCELLATION/ROOM CLOSURE VERIFICATION (Emergency Facility)," HRA informed Branic that payments on Pitt's room would be stopped on April 17, 2007 because Pitt was no longer living there. HRA ceased paying for Pitt's room on or about April 17, 2007, but Pitt continued residing there without paying.

In June 2007, Branic commenced a licensee holdover proceeding in the Civil Court, New York County. Pitt answered and moved for summary judgment, arguing that he was entitled to dismissal of the proceeding because he was not a licensee but a "permanent tenant" under the Rent Stabilization Code (RSC). Branic cross-moved for summary judgment. By order dated June 9, 2009, the Civil Court granted Pitt's motion for summary judgment dismissing the holdover proceeding and denying Branic's motion for summary judgment (24 Misc 3d 940 [2009]). The court held that RSC (9 NYCRR) § 2520.6 (j) categorizes Pitt as a permanent rent-stabilized tenant and protects him from eviction.

Branic moved to renew and reargue the order. The Civil Court denied the motion to renew and reargue by order dated December 3, 2009 (25 Misc 3d 1236[A], 2009 NY Slip Op 52430[U] [2009]).

By order dated December 22, 2010, the Appellate Term reversed the Civil Court's orders, reinstated Branic's holdover petition and granted Branic summary judgment on the petition (30 Misc 3d 29 [2010]). Pitt moved to reargue in the Appellate Term or, in the alternative, for leave to appeal to this Court. On March 8, 2011, the Appellate Term denied Pitt's motion.

Pitt's motion to this Court for leave to appeal was granted on December 11, 2011. The Court also stayed Pitt's eviction on the condition that he paid all arrears and ongoing use and occupancy within 60 days.

On July 30, 2012, Pitt voluntarily moved out of the hotel. Pitt's counsel thereafter perfected the appeal in September 2012. On October 26, 2012, Branic moved this Court to dismiss the appeal on the ground of mootness. This Court denied the motion without opinion on December 4, 2012.

Branic also moves this Court to strike portions of the Appendix that were not part of the record before Civil Court,

including Pitt's memoranda of law and his motion for leave to appeal to the Appellate Term and accompanying exhibits.

As a threshold matter, we find that this appeal is not rendered moot by the fact that Pitt voluntarily vacated the premises before the appeal was perfected. Although, as a general principle, courts are precluded from considering questions which have become moot by a change in circumstances, an exception to the mootness doctrine exists in situations that present the following: "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]). This matter presents an issue of substantial public interest that is likely to recur and evade review. Specifically, this Court must address the question of what constitutes a legal tenancy under the Rent Stabilization Code, and what rights are vested in a person occupying premises under the contract between a landlord and a social service agency. This is an issue that affects a large number of New Yorkers who declare permanent tenancy in a SRO. Thus, it presents an exception to the mootness doctrine (*see generally Matter of Jones v Berman*, 37 NY2d 42, 57 [1975]; *Matter of Concord Realty Co. v City of New York*, 30 NY2d 308, 312-313 [1972]).

Turning to the merits, the crux of this appeal is whether Pitt is a "permanent tenant" as defined by RSC § 2520.6 (j). Under RSC § 2520.6 (j), "permanent tenant" is defined as follows: "For housing accommodations located in hotels, an individual or such individual's family members residing with such individual, who have continuously resided in the same building as a principal residence for a period of at least six months." Further, RSC § 2520.6 (m) defines a "Hotel occupant" as "[a]ny person residing in a housing accommodation in a hotel who is not a permanent tenant." It also states: "Such person shall not be considered a tenant for the purposes of this Code, but shall be entitled to become a permanent tenant as defined in subdivision (j) of this section, upon compliance with the procedure set forth in such subdivision."

A plain reading of RSC § 2520.6 (j) reveals that the only requirement to be a "permanent tenant" is six months or more of continuous residence in a particular hotel building (*see Kanti-Savita Realty Corp. v Santiago*, 18 Misc 3d 74 [App Term, 2d Dept 2007] [criterion is not the payment of rent but continuous

residence in the unit for six months]). Thus, even if Pitt and Branic did not have an express or implied landlord-tenant relationship, Pitt nevertheless qualified as a "permanent tenant," entitling him to the enumerated protections of the Rent Stabilization Code. As it is undisputed that Pitt lived in the subject SRO for well over six months, he certainly acquired the status of a "permanent tenant."

The Appellate Term's citation to the definition of "tenant" under RSC § 2520.6 (d) in support of its holding that the lack of a landlord-tenant relationship between Branic and Pitt precluded Pitt from being a "permanent tenant" under RSC § 2520.6 (j), was erroneous. Nothing in the RSC mandates that these sections should be read together, such that a person must become a "tenant" before becoming a "permanent tenant." Rather, RSC § 2520.6 (d) defines a "tenant" as "[a]ny person or persons named on a lease as lessee or lessees, or who is or are a party or parties to a rental agreement and obligated to pay rent for the use or occupancy of a housing accommodation." A hotel's "permanent tenant," on the other hand, by definition, is not necessarily a party to a landlord-tenant relationship, but merely a hotel occupant who has resided there for six months (RSC § 2520.6 [j], [m]).

RSC § 2520.6 (j) states that "reference in this Code to 'tenant' shall include permanent tenant with respect to hotels." This language indicates that even though the eligibility criteria of a "tenant" and a "permanent tenant" are different, a hotel's permanent tenant is nonetheless afforded the rent stabilization protections under the RSC.

Moreover, a close reading of the definition of "hotel occupant" (RSC § 2520.6 [m]) demonstrates that "tenant," under RSC § 2520.6 (d), and "permanent tenant," under RSC § 2520.6 (j), are not to be read together. The statutory language indicates that a "hotel occupant" shall not be considered a "tenant," but may be entitled to become a "permanent tenant" (RSC § 2520.6 [m]). Hence, even if a person residing in a hotel has a landlord-tenant relationship with the hotel, that person may only become a permanent tenant, not a tenant.

As a result, when Pitt satisfied the requirements of RSC § 2520.6 (j) he was entitled to the protections afforded a "permanent tenant." Any reliance upon the HRA/Branic agreement, which was not part of the record, and the determination that Pitt was "merely a licensee of HRA," was error. Pitt's status as a "permanent tenant" was established by his long-term resi-

dence in the hotel, not by the agreement. Therefore, the existence of an agreement between petitioner and the New York City Human Resources Administration to house eligible homeless persons in a portion of the hotel did not make respondent a licensee or render the Rent Stabilization Code inapplicable to the hotel.

Notwithstanding, Branic argues that under RSC § 2520.11 (b), the agreement between it and HRA was a lease by a government agency, exempting the SRO from the RSC. RSC § 2520.11 (b) states that "housing accommodations owned, operated or leased by the United States, the State of New York, any political subdivision, agency or instrumentality thereof, any municipality or any public housing authority" are exempt from the RSC. However, we find Branic's argument unavailing.

■ Branic never made the HRA/Branic "memorandum of understanding" agreement part of the record below, and it should not be permitted to use the agreement to support its current claims. Further, even if Branic were permitted to rely on the agreement, it was not a lease. The agreement does not show, by its own terms, "the surrender of absolute possession and control of property to another party for an agreed-upon rental" (*Matter of Davis v Dinkins*, 206 AD2d 365, 366 [2d Dept 1994], *lv denied* 85 NY2d 804 [1995]).

In *Dinkins*, the Court held that a similar agreement between the City and a hotel in Queens, which agreed to house up to 150 homeless families, was not a lease for the purposes of the Uniform Land Use Review Procedure and for a "fair-share" hearing (*id.* at 366-367). Here, like the agreement in *Dinkins*, the parties agreed that the hotel would set aside "at most" 134 rooms for potential occupancy by Eligible Persons and HRA would pay a nightly rate for the occupied rooms. HRA did not guarantee that it would fill all rooms. Given the absence of essential terms such as the precise number of rooms to be occupied and paid for by HRA, the agreement cannot be construed as a lease between HRA and Branic (*see Dinkins*, 206 AD2d at 367).

Branic's motion to strike portions of the Appendix is denied. The record demonstrates that Branic failed to produce the subject agreement in the proceedings below. Additionally, even if this Court were to consider the agreement, the terms clearly belie Branic's arguments against Pitt's "permanent tenant" status since the agreement states that an Eligible Person can become a permanent tenant and that Branic may not evict such a person without cause and notice to HRA.

Pitt's request for sanctions against Branic and its attorneys for their failure to produce the agreement is denied. Pitt has not demonstrated that Branic purposefully concealed the agreement in bad faith.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered on or about December 22, 2010, which, to the extent appealed from as limited by the briefs, reversed an order of the Civil Court, New York County (Gerald Lebovits, J.), entered on or about June 9, 2009, granting respondent's motion for summary judgment dismissing the petition and denying petitioner's motion for summary judgment on its claim for possession, denied respondent's motion, and granted petitioner's motion, should be reversed, on the law, with costs, respondent's motion granted, and petitioner's motion denied.

ANDRIAS, J.P., FRIEDMAN, ACOSTA and FREEDMAN, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered on or about December 22, 2010, reversed, on the law, with costs, respondent Phillip Pitt's motion granted, and petitioner's motion denied.

Motion to strike portions of the Appendix denied.